# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD
## 2022 MSPB 17

Docket No. PH-1221-15-0408-W-1

**Timothy Stephen Skarada,**

**Appellant,**

**v.**

**Department of Veterans Affairs,**

**Agency.**

June 22, 2022

Stephen D. Wicks, Esquire, Altoona, Pennsylvania, for the appellant.

Marcus S. Graham, Esquire and Sara Elizabeth Aull, Pittsburgh, Pennsylvania, for the agency.

### BEFORE

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member
Tristan L. Leavitt, Member

### OPINION AND ORDER

¶1    The appellant has filed a petition for review of the initial decision, which dismissed his individual right of action (IRA) appeal for lack of jurisdiction. For the reasons discussed below, we find that the appellant established jurisdiction over his IRA appeal but that he failed to show by preponderant evidence that he was subjected to a covered personnel action. Therefore, we deny the appellant's request for corrective action.

BACKGROUND

¶2        At all times relevant to this appeal, the appellant has been employed as a GS-12 Supervisory Physical Therapist at the agency's Altoona, Pennsylvania Medical Center in the Physical Medicine and Rehabilitation Service (PM&RS). Initial Appeal File (IAF), Tab 1 at 1, 5, Tab 5 at 50.  On or about August 1, 2014, he filed a complaint with the Office of Special Counsel (OSC) alleging that the agency had retaliated against him for his protected whistleblowing disclosures to the Director and Chief of Staff regarding "unusual behavior" and deficient patient care on the part of his supervisor, the Chief of PM&RS (supervisor).  IAF, Tab 1 at 7-56.  The appellant informed OSC that he made these "impaired provider" disclosures between June 26, 2013, and June 20, 2014, and that, because of these disclosures, his chain of command, including the Director, the Chief of Staff, and his supervisor had stopped communicating with him, excluded him from meetings, subjected him to unfounded investigations, refused his request for a "Salary Market Review" of his position, removed his previous responsibilities, yelled at him during meetings, and subjected him to a hostile work environment. *Id.* at 14-16, 24-28, 42-55.

¶3        In a May 5, 2015 letter, OSC notified the appellant that it had made a preliminary determination not to seek corrective action on his behalf.  *Id.* at 135-36.  In a May 15, 2015 response, the appellant contested OSC's preliminary determination, submitted emails describing additional impaired provider disclosures, and alleged that the agency had continued to subject him to retaliatory acts through the date of his response.  *Id.* at 60-134.  In relevant part, he alleged that:  his chain of command had continued to exclude him from meetings and conversations; his supervisor refused to provide him the guidance necessary to carry out his duties; the Chief of Staff "degraded, yelled at, cursed at, and told [him] to shut up" in a meeting on one occasion; the Chief of Staff accused him of "fabricating data"; and his supervisor accused him of privacy violations, which resulted in an investigation.  *Id.* at 64-66.  On May 22, 2015,

OSC notified the appellant that it had determined that he had not suffered a retaliatory personnel action and that it had terminated its investigation into his complaint. *Id.* at 58-59.

¶4     The appellant timely filed this IRA appeal, declining his option for a hearing. IAF, Tab 1. The administrative judge issued an order apprising the appellant of the jurisdictional requirements in an IRA appeal and ordering the parties to submit evidence and argument on the jurisdictional issue. IAF, Tab 12. In response, the appellant alleged, among other things, that the agency had retaliated against him for his impaired provider disclosures by: (1) creating a hostile work environment; (2) subjecting him to unfounded and frequent investigations; (3) refusing to allow review of his position for possible upgrade; and (4) removing previous responsibilities and duties from him. IAF, Tab 15 at 14-18. Before the record on jurisdiction closed, the appellant submitted an addendum in which he alleged that the agency had further retaliated against him by convening an Administrative Investigative Board (AIB) to investigate allegations that he "participated in harassment and intimidation of [agency] employees." IAF, Tab 17 at 3-4. In a March 10, 2016 initial decision based on the written record, the administrative judge dismissed the appeal for lack of jurisdiction, finding that the appellant failed to make a nonfrivolous allegation that the agency had taken or threatened to take a covered personnel action against him. IAF, Tab 18, Initial Decision (ID).

¶5     The appellant has filed a timely petition for review, and the agency has responded in opposition. Petition for Review (PFR) File, Tabs 1, 3. On review, the appellant asserts that he has new evidence and contends that he has continued to experience retaliation for his protected whistleblowing disclosures.[1] PFR File, Tab 1 at 3-5.

_____

[1] The appellant submits new evidence for the first time on review consisting of: (1) a February 22, 2016 letter from the Special Counsel to the President regarding the

ANALYSIS

¶6 The Board has jurisdiction over an IRA appeal based on whistleblower reprisal under the Whistleblower Protection Act (WPA)[2] if the appellant has exhausted his administrative remedies before OSC and makes nonfrivolous allegations that: (1) he engaged in whistleblowing activity by making a protected disclosure; and (2) the disclosure was a contributing factor in the agency's decision to take or fail to take a personnel action. *Yunus v. Department of Veterans Affairs*, 242 F.3d 1367, 1371 (Fed. Cir. 2001); *Bradley v. Department of Homeland Security*, 123 M.S.P.R. 547, ¶ 6 (2016). A nonfrivolous allegation is an assertion that, if proven, could establish the matter at issue. *Bradley*, 123 M.S.P.R. 547, ¶ 6; 5 C.F.R. § 1201.4(s). Whether allegations are nonfrivolous is determined on the basis of the written record. *Bradley*, 123 M.S.P.R. 547, ¶ 6. Any doubt or ambiguity as to whether the appellant made nonfrivolous jurisdictional allegations should be resolved in favor of finding jurisdiction. *Id.* After establishing the Board's jurisdiction in an IRA appeal, the appellant then must establish a prima facie case of whistleblower retaliation by

---

agency's investigation into the appellant's impaired provider disclosures and OSC's findings that the agency properly investigated and responded to the allegations; and (2) an April 12, 2016 email to OSC in which the appellant informed OSC that he had been subjected to an additional fact-finding interview. PFR File, Tab 1 at 7-14. The Board generally will not consider evidence submitted for the first time on review absent a showing that the documents and the information contained in the documents were unavailable before the record closed despite due diligence, and that the evidence is of sufficient weight to warrant an outcome different from that of the initial decision. *See Cleaton v. Department of Justice*, 122 M.S.P.R. 296, ¶ 7 (2015), *aff'd*, 839 F.3d 1126 (Fed. Cir. 2016); 5 C.F.R. § 1201.115(d). Although these documents are new, i.e., they were unavailable before the record closed below, they are not material, i.e., they do not warrant an outcome different from that of the initial decision because they do not establish that the appellant was subjected to a "personnel action" under the Whistleblower Protection Act. Therefore, we will not consider these documents for the first time on review.

[2] The WPA has been amended several times, including by the Whistleblower Protection Enhancement Act. The references herein to the WPA include those amendments.

proving by preponderant evidence that he made a protected disclosure that was a contributing factor in a personnel action taken against him. *Mastrullo v. Department of Labor*, 123 M.S.P.R. 110, ¶ 12 (2015); *see* 5 U.S.C. § 1221(e)(1). For the reasons discussed below, we find that the appellant established Board jurisdiction over his IRA appeal, but failed to prove his prima facie case by preponderant evidence.

The appellant exhausted his administrative remedies regarding his impaired provider disclosures and some of the alleged personnel actions raised in this appeal.

¶7        Under 5 U.S.C. § 1214(a)(3), an employee is required to exhaust his administrative remedies with OSC before seeking corrective action from the Board in an IRA appeal. The Board has recently clarified the substantive requirements of exhaustion. *Chambers v. Department of Homeland Security*, 2022 MSPB 8, ¶¶ 10-11. The requirements are met when an appellant has provided OSC with sufficient basis to pursue an investigation. The Board's jurisdiction is limited to those issues that have been previously raised with OSC. However, an appellant may give a more detailed account of his whistleblowing activities before the Board than he did to OSC. An appellant may demonstrate exhaustion through his initial OSC complaint, evidence that he amended the original complaint, including but not limited to OSC's determination letter and other letters from OSC referencing any amended allegations, and the appellant's written responses to OSC referencing the amended allegations. An appellant may also establish exhaustion through other sufficiently reliable evidence, such as an affidavit or declaration attesting that the appellant raised with OSC the substance of the facts in the Board appeal. *Id.*

¶8        Here, the administrative judge found that the appellant exhausted his OSC remedy regarding his impaired provider disclosures and some of the alleged personnel actions—namely, the alleged significant change in his duties and hostile work environment. ID at 4-5. The parties do not challenge these findings

on review, and we discern no reason to disturb them. *See Crosby v. U.S. Postal Service*, [74 M.S.P.R. 98](#), 106 (1997) (finding no reason to disturb the administrative judge's findings when she considered the evidence as a whole, drew appropriate inferences, and made reasoned conclusions on issues of credibility); *Broughton v. Department of Health & Human Services*, [33 M.S.P.R. 357](#), 359 (1987) (same).

¶9     The administrative judge also found that the appellant failed to exhaust his OSC remedy regarding the alleged retaliatory "unfounded and frequent investigations." ID at 8. We disagree, in part, with this finding. The record reflects that the appellant notified OSC that the agency subjected him to an investigation in September 2013, concerning a billing issue and to another investigation in or around February or March 2015, regarding an alleged Privacy Act violation. IAF, Tab 1 at 16, 65-66, 127-28. These statements sufficiently informed OSC of the grounds of the appellant's charge of whistleblower reprisal with respect to these investigations and gave OSC a sufficient basis to pursue an investigation that might lead to corrective action. *See Mason v. Department of Homeland Security*, [116 M.S.P.R. 135](#), ¶ 8 (2011). Thus, we find that the appellant exhausted his OSC remedy regarding these investigations.

¶10    On the other hand, the appellant was not notified of the AIB investigation until January 15, 2016, IAF, Tab 17, approximately 8 months after OSC's May 22, 2015 closure of its investigation into his prohibited personnel practice allegations, IAF, Tab 1 at 135-36. Although the appellant has stated in his petition for review that he informed OSC of the AIB investigation, he has not presented any evidence showing that he did so. PFR File, Tab 1 at 3-4. His bare allegation, without any evidence showing that he specifically informed OSC of the alleged retaliatory AIB investigation, is insufficient to prove exhaustion of this matter. *See Chambers*, [2022 MSPB 8](#), ¶ 11; *Mason*, [116 M.S.P.R. 135](#), ¶ 8.

¶11    The administrative judge did not specifically determine whether the appellant exhausted his OSC remedy regarding his allegations that his chain of

command retaliated against him by denying his request for review of his position for possible upgrade, excluding him from meetings and conversations, and failing to provide him support and guidance. We find that he did exhaust these allegations by raising them before OSC. IAF, Tab 1 at 14-16, 24-28, 50, 54-55, 62-66. Therefore, we will consider these allegations, as well as the appellant's allegations regarding the September 2013 and March 2015 investigations, hostile work environment, and the change in his duties in our review of whether the appellant has nonfrivolously alleged that the agency subjected him to a covered personnel action in retaliation for his impaired provider disclosures.

The appellant nonfrivolously alleged that he made at least one protected disclosure.

¶12        A nonfrivolous allegation of a protected whistleblowing disclosure is an allegation of fact that, if proven, would show that the appellant disclosed a matter that a reasonable person in his position would believe evidenced one of the categories of wrongdoing specified in 5 U.S.C. § 2302(b)(8). *Salerno v. Department of the Interior*, 123 M.S.P.R. 230, ¶ 6 (2016). The test to determine whether a putative whistleblower has a reasonable belief in the disclosure is an objective one: whether a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the employee could reasonably conclude that the actions of the agency evidenced a violation of any law, rule, or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety. *Id.*; *see* 5 U.S.C. § 2302(b)(8). Here, the administrative judge found that the appellant made a protected disclosure when he reported to agency officials that an agency physician was exhibiting an impaired mental status. ID at 6. The agency

does not contest this finding, and we find that it is supported by the record.[3]  *See Crosby*, 74 M.S.P.R. at 106; *Broughton*, 33 M.S.P.R. at 359.

The appellant has established Board jurisdiction over this IRA appeal.

¶13    In cases such as this one, when the appellant has alleged multiple personnel actions, the Board has jurisdiction when the appellant exhausts his administrative remedies before OSC and makes a nonfrivolous allegation that at least one alleged personnel action was taken in reprisal for at least one alleged protected disclosure.  *Usharauli v. Department of Health & Human Services*, 116 M.S.P.R. 383, ¶ 19 (2011).  Here, the administrative judge found that the appellant failed to nonfrivolously allege that he was subjected to a "personnel action" within the meaning of the WPA and, therefore, did not consider whether he nonfrivolously alleged that his disclosures were a contributing factor in the agency's action.  ID at 6-9.  For the reasons discussed below, we find that the appellant's allegations that the agency removed some of his previous duties and responsibilities and subjected him to a hostile work environment constitute nonfrivolous allegations of a covered personnel action.  We further find that the appellant nonfrivolously

---

[3] The administrative judge did not identify the nature of wrongdoing evidenced by the appellant's disclosures.  We find that the appellant reasonably believed that his disclosures concerned a substantial and specific danger to public health and safety.  In determining whether a disclosed danger is sufficiently substantial and specific to warrant protection under the WPA, the Board must consider:  (1) the likelihood of harm resulting from the danger; (2) when the alleged harm may occur; and (3) the nature of the harm, i.e., the potential consequences.  *Chambers v. Department of the Interior*, 602 F.3d 1370, 1376 (Fed. Cir. 2010).  The disclosed danger here—an allegedly cognitively impaired physician—could undoubtedly lead to immediate and serious harm to patients.  *See Parikh v. Department of Veterans Affairs*, 110 M.S.P.R. 295, ¶¶ 7, 22 (2008) (finding that the appellant nonfrivolously alleged a protected disclosure concerning purported inadequate supervision and training of interns, which could potentially endanger patients), *overruled on other grounds by Hau v. Department of Homeland Security*, 123 M.S.P.R. 620, ¶ 16 (2016), *aff'd sub nom. Bryant v. Merit Systems Protection Board*, 878 F.3d 1320 (Fed. Cir. 2017).

alleged that his disclosures were a contributing factor in at least one of the covered personnel actions.

¶14    Under the WPA, a "personnel action" is defined as an appointment; a promotion; an action under 5 U.S.C. chapter 75 or other disciplinary or corrective action; a detail, transfer, or reassignment; a reinstatement; a restoration; a reemployment; a performance evaluation under 5 U.S.C. chapter 43 or under title 38; a decision about pay, benefits, or awards concerning education or training if the education or training reasonably may be expected to lead to an appointment, promotion, performance evaluation, or other action described in 5 U.S.C. § 2302(a)(2)(A); a decision to order psychiatric testing or examination; the implementation or enforcement of any nondisclosure policy, form, or agreement; and any other significant change in duties, responsibilities, or working conditions. 5 U.S.C. § 2302(a)(2)(A). The legislative history of the 1994 amendment to the WPA indicates that the "any other significant change in duties, responsibilities, or working conditions" should be interpreted broadly, to include "any harassment or discrimination that could have a chilling effect on whistleblowing or otherwise undermine the merit system and should be determined on a case-by-case basis." 140 Cong. Rec. H11,419, H11,421 (daily ed. Oct. 7, 1994) (statement of Rep. McCloskey); *see Savage v. Department of the Army*, 122 M.S.P.R. 612, ¶ 23 (2015); *Roach v. Department of the Army*, 82 M.S.P.R. 464, ¶ 24 (1999).

¶15    Notwithstanding the broad interpretation accorded to the term "significant change in duties, responsibilities, or working conditions," not every agency action is a "personnel action" under the WPA. *See King v. Department of Health & Human Services*, 133 F.3d 1450, 1453 (Fed. Cir. 1998). Rather, to constitute a covered personnel action under the WPA, an agency action must have practical consequences for the employee. *Id.* Therefore, we conclude that to amount to a "significant change" under section 2302(a)(2)(A)(xii), an agency action must

have a significant impact on the overall nature or quality of an employee's working conditions, responsibilities, or duties.

¶16     In determining whether an appellant has suffered a "significant change" in his duties, responsibilities, or working conditions, the Board must consider the alleged agency actions both collectively and individually. *See Holderfield v. Merit Systems Protection Board*, 326 F.3d 1207, 1209 (Fed. Cir. 2003). In *Savage*, the Board stated that a hostile work environment itself may constitute a covered personnel action under the WPA. *Savage*, 122 M.S.P.R. 612, ¶ 23. Although the term "hostile work environment" has a particular meaning in other contexts, we take this opportunity to clarify that allegations of a hostile work environment may establish a personnel action under the WPA, as established by longstanding Board precedent covering whistleblowing claims raised in a civil service law context, only if they meet the statutory criteria, i.e., constitute a significant change in duties, responsibilities, or working conditions. 5 U.S.C. § 2302(a)(2)(A). Thus, as described above, although the "significant change" personnel action should be interpreted broadly to include harassment and discrimination that could have a chilling effect on whistleblowing or otherwise undermine the merit system, only agency actions that, individually or collectively, have practical and significant effects on the overall nature and quality of an employee's working conditions, duties, or responsibilities will be found to constitute a personnel action covered by section 2302(a)(2)(A)(xii).

¶17     In the instant case, the appellant alleged that his chain of command directed him to stop attending leadership meetings and performing "extra duties." IAF, Tab 1 at 14-15, 28, 45. He also alleged that he was excluded from the interview and hiring process for two new hires to his service. *Id.* at 103. We find that these allegations constitute a nonfrivolous allegation of a significant change in duties or responsibilities.

¶18     In addition, the appellant alleged that his chain of command harassed him and subjected him to a hostile work environment by, among other things,

excluding him from meetings and conversations, subjecting him to multiple investigations,[4] accusing him of "fabricating data" and of a Privacy Act violation, refusing his request for a review of his position for possible upgrade, yelling at him on three occasions, and failing to provide him the support and guidance needed to successfully perform his duties. *Id.* at 14-16, 24-28, 50, 54-55, 62-66. Although none of these allegations constitute a covered personnel action individually,[5] we find that the appellant has made a nonfrivolous allegation that the cumulative effect of these actions constituted a significant change in his working conditions. *See Holderfield*, 326 F.3d at 1209 (suggesting that a number of minor agency actions relating to the appellant's working conditions may amount to a covered personnel action under section 2302(a)(2)(A)(xii) collectively, even if they are not covered personnel actions individually); *Covarrubias v. Social Security Administration*, 113 M.S.P.R. 583, ¶¶ 8, 15 n.4 (2010) (finding that the appellant nonfrivolously alleged a significant change in working conditions when she alleged that her supervisors harassed her about

---

[4] Although employee investigations generally are not personnel actions within the meaning of 5 U.S.C. § 2302(a)(2)(A), it is proper to consider evidence regarding an investigation if it is so closely related to an alleged personnel action that it would have been a pretext for gathering information to retaliate for whistleblowing. *Mattil v. Department of State*, 118 M.S.P.R. 662, ¶ 21 (2012). Here, the appellant has not identified any specific personnel actions associated with the September 2013 and February 2015 investigations; rather, he admits that there was no follow-up to either investigation. IAF, Tab 1 at 46, 66. Accordingly, we find that he has not nonfrivolously alleged that the investigations themselves constitute a covered personnel action.

[5] The National Defense Authorization Act for Fiscal Year 2018 (NDAA for 2018), Pub. L. No. 115-91, 131 Stat. 1283, was signed into law on December 12, 2017. The NDAA for 2018 amended 5 U.S.C. § 1214 to allow the Office of Special Counsel to petition the Board for corrective action concerning damages reasonably incurred by an employee due to an agency's investigation of the employee if it was commenced, expanded, or extended in retaliation for protected whistleblowing activity. NDAA for 2018, § 1097(c)(4), 131 Stat. at 1619 (codified at 5 U.S.C. § 1214(i)). Regardless of questions concerning retroactivity, the provision does not apply to the instant appeal because OSC has not petitioned the Board for such relief.

personal telephone calls, closely monitored her whereabouts, followed her to the bathroom, and denied her an accommodation for her spina bifida, which required her to self-catheterize), *overruled on other grounds by Colbert v. Department of Veterans Affairs*, 121 M.S.P.R. 677, ¶ 12 n.5 (2014).

¶19    Having determined that the appellant nonfrivolously alleged that he was subjected to a significant change in duties or responsibilities and a significant change in working conditions, we proceed to the question of whether he nonfrivolously alleged that his protected disclosures were a contributing factor in the agency's decision to take these alleged personnel actions. To satisfy the contributing factor criterion, an appellant only need raise a nonfrivolous allegation that the fact of, or content of, the protected disclosure was one factor that tended to affect the personnel action in any way. *Ontivero v. Department of Homeland Security*, 117 M.S.P.R. 600, ¶ 21 (2012). One way to establish this criterion is the knowledge-timing test, under which an employee may nonfrivolously allege that the disclosure was a contributing factor in a personnel action through circumstantial evidence, such as evidence that the official taking the personnel action knew of the disclosure and that the personnel action occurred within a period of time such that a reasonable person could conclude that the disclosure was a contributing factor in the personnel action. *Id.* The Board has held that a personnel action taken within approximately 1 to 2 years of the appellant's disclosures satisfies the knowledge-timing test. *Id.*, ¶ 23.

¶20    Here, the appellant alleged that, on June 26, 2013, he made his first disclosure regarding his supervisor's alleged impaired status to the Director and Chief of Staff. IAF, Tab 1 at 5. He further alleged that, less than 2 weeks later, the Chief of Staff instructed him to stop going to "other meetings" and "apparently informed" his supervisor of the disclosures because, beginning on July 26, 2013, his supervisor became hostile towards him. *Id.* at 14. The appellant alleged that he continued to report his concerns about his supervisor's impaired status over the next 2 years and, as described above, alleged that his

chain of command continued removing his previous duties and responsibilities and subjecting him to a hostile work environment during that time. *Id.* at 15-16, 24-28, 42-55, 60-66. We thus find that the appellant has satisfied the knowledge-timing test because he nonfrivolously alleged that his supervisor and the Chief of Staff were aware of his disclosures and that they commenced the alleged retaliatory acts within several weeks of his first disclosures. *See Ontivero*, 117 M.S.P.R. 600, ¶ 23. In light of the foregoing, we find that the appellant has established Board jurisdiction over this IRA appeal by proving exhaustion of his OSC remedies and nonfrivolously alleging that he made at least one protected disclosure that was a contributing factor in at least one covered personnel action. *Mastrullo*, 123 M.S.P.R. 110, ¶ 12.

The appellant is not entitled to corrective action because he failed to establish by preponderant evidence that he suffered a covered personnel action.

¶21 As stated above, once an appellant establishes jurisdiction over his IRA appeal, he is entitled to adjudication on the merits of his claim. *Id.* The administrative judge informed the appellant of his burden of proof on the merits of his IRA appeal and ordered him to submit evidence pertaining to both jurisdiction and the merits of his request for corrective action. IAF, Tab 12 at 6-7. The administrative judge further informed the appellant that, because he did not request a hearing, a merits decision would be based on the written record. *Id.* at 8. As the appellant was provided a full and fair opportunity below to develop the record on the merits of his IRA appeal, we may decide the matter here without remanding the case for further proceedings. *See Lis v. U.S. Postal Service*, 113 M.S.P.R. 415, ¶ 10 (2010).

¶22 When reviewing the merits of an IRA appeal, the Board must determine whether the appellant has established by preponderant evidence that he made a protected disclosure that was a contributing factor in an agency's personnel action. *Aquino v. Department of Homeland Security*, 121 M.S.P.R. 35, ¶ 10 (2014). A preponderance of the evidence is the degree of relevant evidence that a

reasonable person, considering the record as a whole, would accept as sufficient to find that a contested fact is more likely to be true than untrue. *Id.*; 5 C.F.R. § 1201.4(q). If the appellant makes such a showing, the Board must order corrective action unless the agency can establish by clear and convincing evidence that it would have taken the same personnel action in the absence of the disclosure. *Aquino*, 121 M.S.P.R. 35, ¶ 10. For the reasons discussed below, we find that the appellant failed to prove by preponderant evidence that the agency subjected him to a covered personnel action.[6]

¶23    To meet his burden of proving that the agency subjected him to a "significant change" in his duties, responsibilities, or working conditions, the appellant must provide sufficient information and evidence to allow the Board to determine whether the agency's alleged action or actions were "significant." *See Shivaee v. Department of the Navy*, 74 M.S.P.R. 383, 388-89 (1997) (finding that an employee's relocation from a building on the naval base to a building located outside of the base did not constitute a personnel action because the employee failed to provide sufficient information for the Board to determine whether his move was "significant," such as whether other employees in his position worked outside the base and whether it is common for such employees to be moved from inside the base to outside and vice versa). As described above, only agency actions that, individually or collectively, have practical and significant effects on the overall nature and quality of an employee's working conditions, duties, or responsibilities, and are likely to have a chilling effect on whistleblowing or

---

[6] The Board may not order corrective action if, "after a finding that a protected disclosure was a contributing factor, the agency demonstrates by clear and convincing evidence that it would have taken the same personnel action in the absence" of the disclosure. 5 U.S.C. § 1221(e)(2). Because we find that the appellant failed to establish his prima facie case, we do not reach the question of whether the agency established by clear and convincing evidence that it would have taken the same actions in the absence of the appellant's disclosures.

otherwise undermine the merit system will be found to constitute a covered personnel action under section 2302(a)(2)(A)(xii).

¶24     Here, as discussed above, the appellant alleged that, as a result of his protected disclosures, his chain of command removed some of his previous duties and responsibilities.  Specifically, he alleged that:  in July 2013, the Chief of Staff told him to stop attending his "other meetings" and to start attending meetings with his supervisor; in September 2013, the Chief of Staff directed him not to attend any more Leadership Development Institute (LDI) meetings after the appellant completed that program and to focus on helping his supervisor "get the department where it was when [he] started"; in July 2014, his supervisor directed him to stop attending the Multidisciplinary Pain Management Committee (MPMC) meetings; and, on unspecified dates, his supervisor and the Chief of Staff excluded him from participating in the interview and hiring process for two new hires in his service.  IAF, Tab 1 at 14-15, 28, 45, 103.

¶25     The appellant's position description does not mention participation in LDI classes, MPMC meetings, or the interview and hiring process as part of his regular duties and responsibilities.  *Id.* at 33-41.   Although the appellant submitted a copy of a memorandum regarding the MPMC, which lists his position as one of the members of the MPMC and states that the MPMC meets monthly, *id.* at 88, he has not described the nature of his prior participation in these monthly meetings or stated how many meetings per year he attended.  Likewise, he has not described the nature and frequency of his prior participation in the interview and hiring process, the LDI meetings, or the "other meetings" he was told to stop attending.  The record does not establish that these apparently collateral duties and responsibilities constituted a "significant" part of the appellant's duties and responsibilities.  *See Shivaee*, 74 M.S.P.R. at 388-89. Moreover, the record reflects that the appellant completed the LDI program in May 2014, and, thus, there would have been no basis for his continued participation thereafter.  IAF, Tab 1 at 71-72.  Accordingly, we find that the

appellant has not established by preponderant evidence that his exclusion from these meetings and the interview and hiring process constituted a significant change in his duties or responsibilities under the WPA.

¶26     The appellant also alleged that, as a result of his protected disclosures, his chain of command subjected him to a hostile work environment, i.e., subjected him to harassment that constituted a significant change in his working conditions. Specifically, he alleged that his supervisor avoided him or walked away from him on multiple occasions, often responded to his questions by stating that he did not know the answer, and failed to provide him adequate guidance. *Id.* at 14, 24-26. For example, he alleged that, in January 2014, he asked his supervisor for guidance regarding scheduling, but that his supervisor failed to provide any guidance over the course of 2 weeks and only responded by saying "I am going to take care of that." *Id.* at 50. Furthermore, the appellant alleged that the Chief of Staff and his supervisor excluded him from meetings in which they discussed realigning audiology services under the appellant's supervision, and then his supervisor denied knowledge of the realignment and failed to provide him guidance on his new supervisory responsibilities. *Id.* at 24, 50, 54. He also alleged that his supervisor told him that he would not support the appellant's request for a review of his position for possible upgrade, even though the Speech and Audiology Service had come under his supervision and his staff had grown to 21 employees. *Id.* at 26-27.

¶27     In addition to the above allegations regarding the lack of communication, cooperation, and guidance from management, the appellant alleged that, as a result of his protected disclosures, his chain of command began treating him in a hostile manner. Specifically, he alleged that, on September 18, 2013, his supervisor came into his office, became visibly angry, walked around to stand behind the appellant's desk, and yelled at him that he needed to fix something. *Id.* at 45-46. The appellant also alleged that, on April 2, 2014, his supervisor "grabbed [his] arm to pull [him] into a room" and yelled at him for reporting an

incident of improper patient care to the Director and Chief of Staff. *Id.* at 64, 82-83. He further alleged that, on September 30, 2014, the Chief of Staff yelled at him, accused him of "making up our service data," and told him to "shut up" during a meeting. *Id.* at 106.

¶28 As noted above, the appellant also alleged that the agency directed him to stop attending MPMC and LDI meetings, told him to stop performing "extra duties," and convened investigations against him in September 2013, concerning a billing issue and another investigation in or around February or March 2015, regarding an alleged Privacy Act violation. *Id.* at 14-16, 28, 45, 65-66, 127-28. The appellant additionally alleged that he was excluded from an annual leadership retreat in 2014. *Id.* at 103.

¶29 As discussed above, to determine whether allegations of a hostile work environment establish a covered personnel action, we must consider whether the appellant has shown, by preponderant evidence, that the agency's actions, considered individually and collectively, had practical and significant effects on the overall nature and quality of his working conditions, duties, or responsibilities. Although the appellant submitted witness affidavits supporting many of his allegations, IAF, Tab 10 at 21-87, we find that he has failed to establish by preponderant evidence that the agency's actions constituted harassment to such a degree that his working conditions were significantly and practically impacted. His chain of command may have been unresponsive to his requests or untimely in providing guidance, but such deficiencies do not amount to harassment. In addition, the three alleged incidents involving yelling were spread out over the course of a year and, while unprofessional, were not sufficiently severe or pervasive to significantly impact the appellant's working conditions. The investigations, although likely inconvenient, were not overly time-consuming, did not result in any action against the appellant or follow-up investigation, and appear to have been routine workplace inquiries. IAF, Tab 1 at 46, 66. The appellant's remaining allegations represent mere disagreements

over workplace policy. In sum, the appellant's allegations, collectively and individually, while perhaps indicative of an unpleasant and unsupportive work environment, do not establish, by preponderant evidence, that he suffered a significant change in his working conditions under the WPA.

¶30      Finally, we have reviewed the relevant legislation enacted during the pendency of this appeal and have concluded that it does not affect the outcome of the appeal.

## ORDER

¶31      This is the final decision of the Merit Systems Protection Board in this appeal. Title 5 of the Code of Federal Regulations, section 1201.113 (5 C.F.R. § 1201.113).

## NOTICE OF APPEAL RIGHTS[7]

You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

---

[7] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you only if you have claimed that you

were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. ____ , 137 S. Ct. 1975 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court‑ appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**. This option applies to you <u>only</u> if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[8] The court of appeals must <u>receive</u> your petition for review within **60 days** of <u>the date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(B).

---

[8] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017. The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017. Pub. L. No. 115-195, 132 Stat. 1510.

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.


FOR THE BOARD:


/s/
_____
Jennifer Everling
Acting Clerk of the Board
Washington, D.C.