# UNITED STATES OF AMERICA
# MERIT SYSTEMS PROTECTION BOARD

MARKUS FISH,

        Appellant,

    v.

DEPARTMENT OF HOMELAND
  SECURITY,

        Agency.

DOCKET NUMBER
DC-1221-21-0013-W-1

DATE:  February 19, 2025


# THIS ORDER IS NONPRECEDENTIAL[1]


<u>Markus Fish</u>, Newburyport, Massachusetts, pro se.

<u>John T. Koerner</u>, Esquire, and <u>Kaitlin Bigger</u>, Esquire, Washington, D.C.,
  for the agency.


**BEFORE**

Cathy A. Harris, Chairman
Henry J. Kerner, Vice Chairman*
Raymond A. Limon, Member

*Vice Chairman Kerner recused himself and
did not participate in the adjudication of this appeal.

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

## REMAND ORDER

The appellant has filed a petition for review of the initial decision, which dismissed his individual right of action (IRA) appeal for lack of jurisdiction. For the reasons discussed below, we GRANT the appellant's petition for review, REVERSE the initial decision to find that the appellant established jurisdiction over his claims as set forth below, and REMAND the case to the regional office for further adjudication in accordance with this Remand Order.

## BACKGROUND

Several weeks after joining the agency's Office of the Chief Security Officer (OCSO) as a GS-13 Security Specialist, the appellant was assigned on January 27, 2020 to serve as the Special Security Officer (SSO), Headquarters Security Support Division (HSSD), for the Countering Weapons of Mass Destruction (CWMD) supporting component. Initial Appeal File (IAF), Tab 9 at 14, Tab 19 at 245. His responsibility was the administration of Sensitive Compartmented Information (SCI) and SCI facilities management operations as it pertained to CWMD. IAF, Tab 9 at 14-15. Shortly after he began his assignment, the appellant began to question the relationship between the OCSO and its underlying units, including CWMD, and the authority of A.W. to serve as CWMD's Special Security Representative (SSR), claiming that A.W. lacked a proper delegation of authority to so act. IAF, Tab 8 at 22-23, 29. The appellant shared the latter concern with his first-line supervisor, the HSSD Director, and others, and in a March 12, 2020 email, he acknowledged that, while a delegation did exist from 2018, it was unsigned, suggesting that it was therefore invalid and that A.W. was improperly exercising authority without oversight.[2] *Id.* at 22. Several weeks later, the appellant sent emails to CWMD's members, including

---

[2] The unsigned April 24, 2018 delegation was from the Technical Operations Branch Chief. On January 20, 2020, the Branch Chief of the Office of the Chief Security Officer asked the Technical Operations Branch Chief to sign the unsigned delegation, which he did on that date. IAF, Tab 19 at 243, 246.

A.W., requesting specific data on a weekly and monthly basis concerning how the staff was accessing or using sensitive or classified information. IAF, Tab 9 at 22-25. A.W. and other agency officials responded by questioning the propriety of the appellant's data request. *Id.* at 4-6, 20-21. The situation escalated, and the appellant blamed the tension on A.W. as well as other managers who did not support his view regarding A.W.'s lack of authority. *Id.* at 18-19. According to the appellant, he communicated to his supervisory chain throughout this time that he would not obey any instruction that was premised on A.W.'s presumed authority. IAF, Tab 5 at 42, Tab 8 at 44.

While this was going on, the appellant notified his supervisor, the HSSD Director, on April 28, 2020, that, effective April 30, 2020, he would be teleworking from an alternate location because of childcare issues related to COVID-19. IAF, Tab 19 at 87. The Director advised him that he had not requested or been approved to do so and that his request would not be approved because his duties could require him to appear at the work site on 2 hours' notice.[3] *Id.* at 96. On May 8, 2020, the Director learned that the appellant had been working from New York since April 30, 2020. *Id.* at 119. The appellant was notified that he could request leave for the time he had been working at an unapproved location, but, when he declined to do so, the agency coded the appellant's time as absent without leave (AWOL). *Id.* at 121, 226-29.

On May 11, 2020, the appellant filed a whistleblower retaliation complaint with the Office of Special Counsel (OSC) in which he alleged that, based on his disclosures regarding A.W.'s authority and his refusal to obey instructions requiring him to honor that authority, the agency had changed his duties, established new communication and workflow channels to marginalize and exclude him, imposed policies that caused undue hardship on him and his family, and took actions regarding his pay and benefits. IAF, Tab 6 at 14-19.

---

[3] The appellant was approved to telework from his home in Alexandria, Virginia. The alternate work site he referenced was in New York. IAF, Tab 19 at 56.

On May 22, 2020, the Director proposed to suspend him for 10 days for failure to follow instructions and disrespectful behavior (working at an unapproved location).[4]  IAF, Tab 12 at 4-9.  On June 30, 2020, the supervisor rescinded the notice and reissued it, deleting certain language from the background section, *id.* at 43, after which, on July 30, 2020, the deciding official sustained the charges in part, mitigating the penalty to a 3-day suspension, which the appellant served from August 10-12, 2020, *id.* at 62-65.

On July 30, 2020, the appellant notified OSC of his suspension.  IAF, Tab 6 at 33.  On August 31, 2020, OSC preliminarily determined to close the appellant's complaint without action.  *Id.* at 38-39.  On September 11, 2020, the appellant advised OSC that he planned to resign.  *Id.* at 40.  On September 30, 2020, OSC issued its closure letter.  IAF, Tab 1 at 12.

On October 7, 2020, the appellant filed this IRA appeal.  IAF, Tab 1.  In addition to repeating the alleged protected disclosures and activity and personnel actions he had raised with OSC, he claimed that the agency had effected those actions to force him to resign, which he did on October 24, 2020.  *Id.* at 5; IAF, Tab 8 at 16.  In connection with his appeal, the appellant requested a hearing.  IAF, Tab 1 at 2.  The administrative judge issued an order setting forth the requirements for proving the Board's jurisdiction and the merits in an IRA appeal.  IAF, Tab 3.  The appellant made numerous submissions in response.  IAF, Tabs 5-12, 14-16.  The agency moved that the appeal be dismissed for lack of jurisdiction on the grounds that the appellant did not exhaust with OSC certain alleged personnel actions and that, as to others that he had exhausted with OSC, he did not nonfrivolously allege that he made protected disclosures that contributed to those personnel actions.  IAF, Tab 19.  The appellant replied in opposition to the agency's motion.  IAF, Tab 26.

---

[4] At the same time, the agency changed the coding for the time period at issue to paid duty status.  IAF, Tab 12 at 4.

Thereafter, the administrative judge issued an initial decision based on the written record. IAF, Tab 29, Initial Decision (ID). He first found that, because the appellant's resignation took place after he initiated his appeal, he did not exhaust that matter before OSC, and therefore, it was not before the Board in the context of this IRA appeal. ID at 1-2, 10-11. The administrative judge found that the two remaining alleged personnel actions were (1) the agency's placement of the appellant on AWOL and the disciplinary action it took against him for working remotely from an unapproved location, and (2) his claim that the agency significantly changed his work duties/conditions during the spring and early summer of 2020 by removing responsibilities from his purview and creating backchannels around him. ID at 11; *see* 5 U.S.C. § 2302(a)(2)(A)(xii). The administrative judge then found that the appellant's alleged protected disclosures that preceded these two actions involved the concerns he raised about A.W.'s role and the negative response he (the appellant) received from A.W. and others when he sought to collect certain data. As to these disclosures, the administrative judge found that the appellant did not nonfrivolously allege that he reasonably believed that he was disclosing a violation of any law, rule, or regulation. ID at 11-16. Accordingly, the administrative judge dismissed the appellant's IRA appeal for lack of jurisdiction. ID at 2, 17.

The appellant has filed a petition for review, the agency has responded, and the appellant has replied. Petition for Review (PFR) File, Tabs 1, 3-4.

## DISCUSSION OF ARGUMENTS ON REVIEW

On review, the appellant argues that the administrative judge made three errors: two of fact and one of law. PFR File, Tab 1 at 4-5. Specifically, the appellant argues that the administrative judge erred in finding that he (the appellant) did not identify any specific laws, rules, or regulations that the agency violated and in stating that he did not allege that the individual who appointed A.W. as SSR lacked the authority to do so. *Id.* at 7-15; ID at 13-14. The

appellant also argues that the administrative judge erroneously interpreted the law regarding the delegation of authority over Classified National Security Information, including SCI. PFR File, Tab 1 at 7-23.

To establish the Board's jurisdiction over an IRA appeal, an appellant must exhaust his administrative remedies with OSC and nonfrivolously allege that he made a protected disclosure under 5 U.S.C. § 2302(b)(8) or engaged in protected activity under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D), and that his disclosure or activity was a contributing factor in a personnel action as defined by 5 U.S.C. § 2302(a). *Gabel v. Department of Veterans Affairs*, 2023 MSPB 4, ¶ 5; *Salerno v. Department of the Interior*, 123 M.S.P.R. 230, ¶ 5 (2016); 5 C.F.R. § 1201.57(a)(1), (b). A nonfrivolous allegation is an assertion that, if proven, could establish the matter asserted. 5 C.F.R. § 1201.4(s); *see also Hessami v. Merit Systems Protection Board*, 979 F.3d 1362, 1364, 1369 (Fed. Cir. 2020).

<u>The administrative judge erred in finding that the appellant did not make a nonfrivolous allegation that the agency violated any law, rule, or regulation when he raised concerns about the propriety of A.W.'s appointment and role.</u>

In finding that the appellant did not nonfrivolously allege facts showing that he made a protected whistleblowing disclosure of any violation of a law, rule, or regulation, the administrative judge found that none of the appellant's written correspondence disclosed or identified any specific violations of a law, rule, or regulation with the required degree of detail needed and, similarly, that his reporting to his supervisor, the HSSD Director, about the absence of a proper delegation memorandum appointing A.W. did not contain a disclosure of a violation of any law, rule, or regulation. ID at 13-14.

On review, the appellant maintains that he did, in fact, identify statutes, regulations, and policies that the agency violated by allowing A.W. to serve as SSR. PFR File, Tab 1 at 7-12. Specifically, the appellant references, as he did before OSC and to the administrative judge, Executive Order 13526, 6 C.F.R. § 7.10, DHS Delegation 12000, DHS Directive 121-01, DHS Instructions

121-01-011, 013, the National Security Act of 1947, and Intelligence Community Directives 700 and 703.[5] PFR File, Tab 1 at 7; IAF, Tab 1 at 7. In other submissions, particularly a slide that the appellant entitled Systemic Violations within Classified National Security Information (CNSI) and SCI, which he shared with various management officials, the appellant described how these provisions interact and explained specifically how, in his view, they precluded A.W. from serving as SSR without being delegated proper authority from an appropriate individual. IAF, Tab 10 at 4-5, Tab 26 at 22. Contrary to the administrative judge's statement, ID at 13-14, the appellant did argue below that the Technical Operations Branch Chief lacked authority to appoint A.W. as SSR. Referencing DHS Instruction 121-01-001 and Intelligence Community Directives (ICD) 700 and 703, the appellant argued that only the Director of HSSD has the authority to appoint an SSR, that he did not do so, and that he did not further delegate that authority to the Technical Operations Branch Chief. IAF, Tab 26 at 29-30.

At this jurisdictional stage, an appellant is not required to prove that his disclosure is protected under 5 U.S.C. § 2302(b)(8). *Smart v. Department of the Army*, 98 M.S.P.R. 566, ¶ 9, *aff'd*, 157 F. App'x 260 (Fed. Cir. 2005). Rather, the appellant is only burdened with making a nonfrivolous allegation that the matter disclosed was one that a reasonable person in his position would believe evidenced one of the categories of wrongdoing specified in 5 U.S.C. § 2302(b)(8). *Salerno*, 123 M.S.P.R. 230, ¶ 6. The test for determining whether a belief was reasonable is whether a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the appellant could reasonably conclude that the actions of the Government evidenced such wrongdoing. *Id.*; *Benton-Flores v. Department of Defense*, 121 M.S.P.R. 428, ¶ 8 (2014); 5 C.F.R. § 1209.4(f). The U.S. Court of Appeals for the Federal Circuit

---

[5] Although the appellant requested that the administrative judge take official notice of these provisions, IAF, Tab 26, the administrative judge did not address the request. Pursuant to 5 C.F.R. § 1201.64, the Board can take official notice of matters that can be verified.

has clarified and held that, when evaluating the Board's jurisdiction over a whistleblower claim, the question of whether the appellant has nonfrivolously alleged protected disclosures that contributed to a personnel action must be determined based on whether the employee alleged sufficient factual matter, accepted as true, to state a claim that is plausible on its face. *Hessami*, 979 F.3d at 1369.

We have considered the appellant's claims consistent with these principles and conclude that he did raise a nonfrivolous allegation of a protected disclosure regarding the propriety of A.W.'s appointment as CWMD's SSR. The crux of the appellant's allegation is that A.W. was not properly appointed to his position by an individual authorized to appoint him and that, therefore, his actions in exercising authority over security management of CNSI, including SCI, with little or no oversight or accountability, were unlawful. As SSO for CWMD, the appellant demonstrated his knowledge about and familiarity with the statutes, regulations, and policies that pertain to how and by whom certain security personnel within the hierarchy of the organization can lawfully be appointed. We can infer from his allegations that, at the time he made his disclosure, he believed, based on documents he had reviewed and agency policy documents he read in the context of directives and delegations, that A.W. was not appointed to his SSR position by an individual who was authorized to appoint him and that A.W. was therefore acting without authority. The appellant made this and related assertions to numerous agency officials through emails, discussions, and the creation of a series of slides. These allegations are nonfrivolous because they describe a facially plausible series of events and set forth specific facts supporting the appellant's belief of wrongdoing. They are also material because, if accepted as true, they are sufficient to support a reasonable belief of a violation of a law, rule, or regulation. We therefore conclude that the appellant nonfrivolously alleged that he made a protected disclosure based on his reasonable belief that the agency violated a law, rule, or regulation in connection

with A.W.'s appointment to and functioning as CWMD's SSR without proper authorization. *See Hessami*, 979 F.3d at 1369-70.

<u>The appellant nonfrivolously alleged that he engaged in protected activity pursuant to 5 U.S.C. § 2302(b)(9)(D) by refusing to obey an order that would require him to violate a law, rule, or regulation.</u>

The appellant also alleged that, in addition to making protected disclosures, he also engaged in protected activity pursuant to 5 U.S.C. § 2302(b)(9)(D) when he refused to comply with or obey orders that required him to violate laws, rules, and regulations. IAF, Tab 1 at 5, Tab 5 at 12, Tab 6 at 15-16, 23-24. The administrative judge made no finding concerning whether the appellant nonfrivolously alleged that he engaged in protected activity under section 2302(b)(9)(D). The appellant reraises this claim on review. PFR File, Tab 1 at 4, 9-12. Because the parties were given proper jurisdictional notice and because jurisdictional findings are based solely on the written record, we address this claim here. *See Oscar v. Department of Agriculture*, 103 M.S.P.R. 591, ¶ 7 (2006) (explaining that a determination of whether allegations are nonfrivolous is based on the written record in an IRA appeal).

Generally, the appellant asserted that he refused to obey orders and instructions that would require him to violate the same laws, rules, and regulations concerning appointment and delegated authority of the CWMD's SSR as referenced above.[6] IAF, Tab 6 at 23-24. To support this claim, which was properly exhausted with OSC, *see id*., he alleges that he "refused in writing to

---

[6] The appellant also asserted that he refused to obey an instruction that would have required him to violate the Fair Labor Standards Act (FLSA) as it relates to his April/May 2020 telework and AWOL designation issue. IAF, Tab 6 at 23-24. Specifically, he alleged that the agency instructed him to retroactively request leave for the time that he worked, which, he claims, is a violation of the FLSA. IAF, Tab 5 at 28, 49. In the initial decision, the administrative judge observed that the appellant held a position that is exempt from the FLSA. ID at 11-12 n.2; IAF, Tab 19 at 39. The appellant has not challenged this categorization of his position on review, and we find it sound on its face. IAF, Tab 19 at 39. Therefore, we conclude that the appellant did not nonfrivolously allege that he engaged in protected activity in this regard.

comply with instructions to withdraw/limit/degrade oversight activities contrary to regulation and policy," IAF, Tab 5 at 42. In his appeal, he explicitly references Executive Order 13526, the National Security Act of 1947 as amended, 6 C.F.R. § 7.10; ICD 700 and 703, DHS Delegation 12000; DHR Directive 121-01; DHS Instructions 121-01-011 and 121-01-013. IAF, Tab 1 at 7, IAF, Tab 10 at 4-5, Tab 26 at 13, 17, 22, 29-30; *see also* PFR File, Tab 1 at 11. As acknowledged above, these authorities broadly concern the relevant grants and delegations of authority as they relate to the agency's organizational structure. Although some reference oversight, we have not determined if any address in detail what precise oversight is required and how it operates for the agency components at issue here. Further, the appellant's allegation that he refused to comply with instructions to limit oversight activities lacks relevant detail, such as what specific instruction he was given, how that instruction would have violated specific provisions of any of the above-referenced authorities, when he refused to comply with the instruction, and to whom he communicated that refusal. Nonetheless, the burden at the jurisdictional stage is a low one, and we must resolve any doubt or ambiguity in the appellant's allegations in favor of finding jurisdiction. *See Usharauli v. Department of Health and Human Services*, 116 M.S.P.R. 383, ¶ 19 (2011) (stating that any doubt or ambiguity as to whether the appellant made a nonfrivolous jurisdictional allegation should be resolved in favor of finding jurisdiction); *Jessup v. Department of Homeland Security*, 107 M.S.P.R. 1, ¶ 10 (2007) (observing that the appellant's burden of making a nonfrivolous allegation is low and requires only a minimal sufficient showing). Accordingly, because the appellant asserted that he was instructed to withdraw, limit, or degrade oversight activities in violation of the laws, rules, and regulations regarding the agency's granted and delegated authority and relevant oversight related thereto, and he refused to comply with that instruction, we find that he nonfrivolously alleged that he engaged in protected activity pursuant to 5 U.S.C. § 2302(b)(9)(D).

<u>The appellant nonfrivolously alleged that his protected disclosure and protected activity were contributing factors in the agency's decision to take several personnel actions against him.</u>

Because the administrative judge found that the appellant did not nonfrivolously allege that he made a protected disclosure or engaged in protected activity, the initial decision did not address whether the appellant nonfrivolously alleged that a protected disclosure or activity was a contributing factor in a personnel action. Because we reverse that finding as set forth above, we now address whether the written record supports a finding that the appellant nonfrivolously alleged the contributing factor element. *See Oscar*, 103 M.S.P.R. 591, ¶ 7.

As noted above, the administrative judge found that the appellant exhausted two personnel actions with OSC: (1) his placement on AWOL and the disciplinary action for working remotely from an unapproved location, and (2) his claim that the agency significantly changed his work duties/conditions during the spring and early summer of 2020.[7] ID at 11. Although the appellant does not challenge these findings on review, we find it more appropriate to address separately the AWOL designation and its effects on his pay and benefits and the distinct disciplinary actions, to include the proposal to suspend him for 10 days and the ultimate 3-day suspension. *See Redschlag v. Department of the Army*, 89 M.S.P.R. 589, ¶ 98 (2001) (finding that a proposed action is a personnel action within the Board's IRA jurisdiction). The appellant has exhausted these separate claims of personnel actions before OSC, and we address them individually below. IAF, Tab 6 at 12-40, 45-46.

---

[7] The appellant also alleged that his involuntary resignation constituted a personnel action. IAF, Tab 1, Tab 8 at 16. In the initial decision, the administrative judge explained that, because the appellant resigned from employment in October 2020, three weeks after he had already filed the instant appeal, he could not have exhausted his involuntary resignation claim with OSC. ID at 10-11. The appellant has not challenged this finding on review, and we find no reason to disturb it.

On their face, the proposal to suspend the appellant for 10 days, the 3-day suspension, and the AWOL designation (which affected his pay and benefits) constitute personnel actions under 5 U.S.C. § 2302(a)(2)(A)(iii), (ix).[8]   The appellant's claim that agency officials harassed and marginalized him and changed his duties is one to be analyzed as an allegation of a significant change in duties, responsibilities, or working conditions pursuant to 5 U.S.C. § 2302(a)(2)(A)(xii).  *See Skarada v. Department of Veterans Affairs*, 2022 MSPB 17, ¶¶ 14-18.

In *Skarada*, the Board clarified the legal standard applicable to claims of a "significant change in duties, responsibilities, or working conditions."  In particular, the Board found that, although "significant change" should be interpreted broadly to include harassment and discrimination that could have a chilling effect on whistleblowing or otherwise undermine the merit system, only agency actions that, individually or collectively, have practical and significant

---

[8] As noted by the administrative judge, in the agency's May 22, 2020 notice of proposed suspension, it explained that it was rescinding the appellant's placement on AWOL.  ID at 11; IAF, Tab 19 at 159.  The appellant filed his complaint with OSC on May 11, 2020.  Thus, at the time the appellant filed his OSC complaint, the AWOL designation and its effect on the appellant's pay and benefits was still an active issue. In *Lachenmyer v. Federal Election Commission*, 92 M.S.P.R. 80, ¶ 7 (2002), the Board explained that when an agency unilaterally cancels a personnel action after the appellant files a request for corrective action with OSC, but prior to the filing of his IRA appeal, his IRA appeal will not be moot unless the appellant consents to such divestiture or the agency completely rescinds the action being appealed.  *Id*.  Notwithstanding the agency's complete rescission, a claim is not moot if the appellant still has outstanding claims for consequential damages and corrective action.  *Id*., ¶ 10.  An administrative judge must afford an appellant a specific opportunity to raise a claim for consequential damages and sufficient notice to address the issue before dismissing the claim as moot. *See Santos v. Department of Energy*, 99 M.S.P.R. 475, ¶ 7 (2005).  On remand, the parties should address whether the agency fully rescinded this action and, if so, the administrative judge should provide the appellant with a specific opportunity to raise a claim of consequential damages.  In the interest of judicial efficiency, this remand order addresses this claim within the context of the appellant's jurisdictional burden, presuming it is not moot.  If the administrative judge determines, consistent with the principles set forth here, that the claim is moot, he should explain his findings in a new initial decision.

consequence for an appellant constitute a personnel action covered by section 2302(a)(2)(A)(xii). *Skarada*, 2022 MSPB 17, ¶¶ 15-16. Thus, the agency actions must have significant effects on the overall nature and quality of the appellant's working conditions, duties, or responsibilities. *Id*. Here, the appellant alleges that agency officials began to withhold certain information from him and that his supervisors established new communication and workflow channels to marginalize and exclude him, effectively transferred his "role, responsibilities, and authorities" to A.W.," and "ostrasiz[ed]" him from colleagues and stakeholders. IAF, Tab 5 at 27, Tab 6 at 45. We find that these actions could have a significant impact on the overall nature or quality of the appellant's working conditions, responsibilities, and duties, and that, collectively, they amount to a nonfrivolous allegation of a personnel action pursuant to 5 U.S.C. § 2302(a)(2)(A)(xii). *See Holderfield v. Merit Systems Protection Board*, 326 F.3d 1207, 1209 (Fed. Cir. 2003) (suggesting that a number of minor agency actions relating to the appellant's working conditions may amount to a covered personnel action under section 2302(a)(2)(A)(xii) collectively, even if they are not covered personnel actions individually).

We now turn to whether the appellant nonfrivolously alleged that his protected disclosures and activity were contributing factors in the referenced personnel actions. To satisfy the contributing factor criterion at the jurisdictional stage of an IRA appeal, the appellant only need raise a nonfrivolous allegation that the fact or the content of the protected disclosure or protected activity was one factor that tended to affect a personnel action in any way. *Skarada*, 2022 MSPB 17, ¶ 19; *Salerno*, 123 M.S.P.R. 230, ¶ 13. One way to establish this criterion is the knowledge/timing test, under which an employee may nonfrivolously allege that the disclosure or activity was a contributing factor in a personnel action through circumstantial evidence, such as evidence that the official who took the personnel action knew of the disclosure and that the personnel action occurred within a period of time such that a reasonable person

could conclude that the disclosure was a contributing factor in the personnel action. *Skarada*, 2022 MSPB 17, ¶ 19; *Salerno*, 123 M.S.P.R. 230, ¶ 13.

The appellant alleges that he disclosed his concerns about A.W. to his first-line supervisor and others on several occasions, beginning in February and March 2020. IAF, Tab 14 at 7, Tab 8 at 22, 25, 47-48. He also alleges that his refusal to obey instructions to withdraw, limit, or degrade oversight activities in violation of law, rule, or regulation was made to his supervisory chain in March and April 2020. IAF, Tab 5 at 42-43, Tab 6 at 15. The appellant alleges that all of the personnel actions listed above occurred in the timespan between April and July 2020. IAF, Tab 5 at 27-29, 31, Tab 6 at 33. Because the appellant has alleged that he made a protected disclosure and engaged in protected activity only a few months prior, we find that he has met the timing prong of the knowledge/timing test for all personnel actions at issue here. *See Skarada*, 2022 MSPB 17, ¶ 19 (stating that a personnel action taken within 1 to 2 years of the appellant's disclosure satisfies the knowledge/timing test); *Mastrullo v. Department of Labor*, 123 M.S.P.R. 110, ¶ 21 (2015) (same).

Regarding the knowledge component of the knowledge/timing test, the appellant alleged that the HSSD Director was the primary actor responsible for all of the listed personnel actions and that, from March 2020 onward, he had "complete knowledge of [the a]ppellant's protected disclosures and activities since he was, in all cases, the primary or secondary audience and recipient of those disclosures." IAF, Tab 5 at 15, 51. Regarding the 3-day suspension, however, we observe that the Executive Director of OCSO was the deciding official and, therefore, ultimately responsible for that action. IAF, Tab 19 at 40; *see Hessami*, 979 F.3d at 1369 n.5 (explaining that nonfrivolous allegations of jurisdiction are not assessed "in a vacuum" but rather involve a context-specific assessment involving the Board's judicial experience and common sense). The appellant has otherwise generally alleged that "management," "Executive leadership," and his "supervisory chain" were aware of his protected disclosure

and activity. IAF, Tab 5 at 11-12, Tab 6 at 15. At this jurisdictional stage, we construe the appellant's references to those high-level agency officials to include the Executive Director of OCSO. *See Usharauli*, 116 M.S.P.R. 383, ¶ 19; *Jessup*, 107 M.S.P.R. 1, ¶ 10. Thus, we find that the appellant's allegations also meet the knowledge prong of the knowledge/timing test regarding all personnel actions discussed above. Accordingly, we find that the appellant has nonfrivolously alleged that his protected disclosure and protected activity were contributing factors in the proposed 10-day suspension, the 3-day suspension, the AWOL designation and its impact on pay and benefits, and a significant change in working conditions, duties, or responsibilities.

Based on the foregoing, we find that the appellant has established the Board's jurisdiction over his claims as set forth above. *See Gabel*, 2023 MSPB 4, ¶ 5.

## ORDER

Having found that the appellant has met his jurisdictional burdens, we remand this case to the regional office for a hearing and further adjudication consistent with this Remand Order.

FOR THE BOARD: _____

*Gina K. Grippando*

Gina K. Grippando
Clerk of the Board

Washington, D.C.