## UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

RIKKIANISHA SANDRIKARENE
   HUNT-HAWES,
            Appellant,

       v.

DEPARTMENT OF VETERANS
   AFFAIRS,
            Agency.

DOCKET NUMBER
AT-1221-19-0013-W-1

DATE: February 23, 2024

# THIS ORDER IS NONPRECEDENTIAL[1]

<u>Christopher Hugh Bonk</u>, Esquire, and <u>Kevin L. Owen</u>, Esquire, Silver Spring, Maryland, for the appellant.

<u>W. Robert Boulware</u>, Esquire, Montgomery, Alabama, for the agency.

### BEFORE

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member

### REMAND ORDER

¶1     The appellant has filed a petition for review of the initial decision, which dismissed her individual right of action (IRA) appeal for lack of jurisdiction. For the reasons discussed below, we GRANT the appellant's petition for review,

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

VACATE the initial decision, and REMAND the case to the regional office for further adjudication in accordance with this Remand Order.

## DISCUSSION OF ARGUMENTS ON REVIEW

<u>The appellant's petition for review is timely filed.</u>

¶2  A petition for review generally must be filed within 35 days after the date of the issuance of the initial decision or, if the party filing the petition shows that the initial decision was received more than 5 days after it was issued, within 30 days after the party received the initial decision.  5 C.F.R. § 1201.114(e).  The initial decision was issued on December 7, 2018, and it was sent via postal delivery to the address listed in the appellant's initial appeal.  Initial Appeal File (IAF), Tab 1 at 2, Tab 7, Initial Decision (ID) at 1, Tab 8 at 1.  After filing the initial appeal, however, the appellant moved to a different address.  Petition for Review (PFR) File, Tab 1 at 4-5.  Although the appellant had elected to e-file, she did not receive electronic service of the initial decision.  IAF, Tab 1 at 2, Tab 8 at 1.  The appellant attests that she received the initial decision on January 22, 2019, when it was forwarded to her new address.  PFR File, Tab 1 at 16, Tab 3 at 2-4.  Because the initial decision was received more than 5 days after it was issued, the 30-day requirement in 5 C.F.R. § 1201.114(e) applies.  Her February 22, 2019 petition for review was filed within 30 days of receipt of the initial decision, in compliance with section 1201.114(e).

¶3  We have considered whether the appellant should be deemed to have constructively received the initial decision at an earlier date because she did not inform the Board of her address change.  *See* 5 C.F.R. § 1201.26(a)(2) (stating that parties are obligated to notify the Board of address changes).  The Board's regulation at 5 C.F.R. § 1201.22(b)(3) explains that correspondence properly addressed and sent to the appellant's address via postal delivery is presumed to have been duly delivered to the addressee.  *See Little v. U.S. Postal Service*, 124 M.S.P.R. 183, ¶¶ 7-8 (2017); *see also* 5 C.F.R. § 1201.114(e)(3) (explaining

that the date the appellant receives the initial decision is determined according to section 1201.22(b)(3)). The presumption of constructive receipt may be overcome under the circumstances of a particular case. *See* 5 U.S.C. § 1201.22(b)(3). Under the circumstances of this case, we find that application of the constructive receipt doctrine is inappropriate. The appellant registered as an e-filer, IAF, Tab 1 at 2, and the Board's regulations at the time provided that, "[w]hen MSPB documents are issued, e-mail messages will be sent to e-filers that notify them of the issuance and that contain links to the Repository where the documents can be viewed and downloaded," 5 C.F.R. § 1201.14(j)(1) (2019). The regulation further stated that "[p]aper copies of these documents will not ordinarily be served on e-filers." *Id.* Thus, the appellant may justifiably have presumed that she would be receiving the documents electronically, as she had requested, and a reasonable person may not have viewed updating her mailing address as a priority. Accordingly, we find that constructive receipt should not apply and the appellant's petition for review is timely. *See Buniff v. Department of Agriculture*, 79 M.S.P.R. 118, ¶ 5 (1998) (calculating the deadline for a petition for review from the date the appellant received the initial decision when the regional office sent the initial decision to an old address rather than the appellant's updated address of record); *see also Blatt v. Department of the Army*, 121 M.S.P.R. 473, ¶ 5 (2014) (finding that an appellant established good cause for an untimely petition for review when the Board served the initial decision to an outdated email account despite the fact that the administrative judge had previously granted the appellant's motion to convert to service by regular mail).

The Board has jurisdiction over the appellant's IRA appeal, and we remand for a hearing on the merits.

¶4    Having found that the appellant's petition for review is timely, we now turn to the administrative judge's finding that the appellant failed to establish jurisdiction over her IRA appeal. ID at 2-5. The Board has jurisdiction over an IRA appeal if the appellant exhausts her administrative remedies before the

Office of Special Counsel (OSC) and makes nonfrivolous allegations that (1) she made a protected disclosure described under 5 U.S.C. § 2302(b)(8) or engaged in protected activity as specified in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D), and (2) the disclosure or protected activity was a contributing factor in the agency's decision to take or fail to take a personnel action as defined by 5 U.S.C. § 2302(a)(2)(A). *McCray v. Department of the Army*, 2023 MSPB 10, ¶ 11. Once an appellant has established jurisdiction over her appeal, she is entitled to a hearing on the merits, in which she will have the opportunity to prove her claim by preponderant evidence. *Salerno v. Department of the Interior*, 123 M.S.P.R. 230, ¶ 5 (2016).

¶5        A nonfrivolous allegation of a protected disclosure is an allegation of facts that, if proven, would show that the appellant disclosed a matter that a reasonable person in her position would believe evidenced one of the categories of wrongdoing specified in 5 U.S.C. § 2302(b)(8). *Salerno*, 123 M.S.P.R. 230, ¶ 6. To satisfy the contributing factor criterion at the jurisdictional stage, an appellant need only raise a nonfrivolous allegation that the fact of, or content of, the protected disclosure or activity was one factor that tended to affect the personnel action in any way. *Id.*, ¶ 13. Under the knowledge/timing test, an appellant may nonfrivolously allege that the disclosure or activity was a contributing factor through circumstantial evidence, such as evidence that the official who took the personnel action knew of the disclosure or activity and that the personnel action occurred within a period of time such that a reasonable person could conclude that the disclosure or activity was a contributing factor in the personnel action. *See* 5 U.S.C. § 1221(e)(1); *Salerno*, 123 M.S.P.R. 230, ¶ 13. In addition to the knowledge/timing test, there are other possible ways for an appellant to satisfy the contributing factor criterion. *See Dorney v. Department of the Army*, 117 M.S.P.R. 480, ¶¶ 14-15 (2012) (explaining that other evidence relevant to the contributing factor criterion includes the strength or weakness of the agency's reasons for taking the personnel action, whether the whistleblowing was

personally directed at the proposing or deciding officials, and whether those officials had a desire or motive to retaliate).

¶6    In the initial decision, the administrative judge found that the appellant exhausted her administrative remedies before OSC. ID at 2. She found that the appellant failed to make a nonfrivolous allegation that she made a protected disclosure under 5 U.S.C. § 2302(b)(8). ID at 2-5. She did not discuss whether the appellant nonfrivolous alleged that she engaged in protected activity under section 2302(b)(9). *Id.* Because she found that the appellant failed to nonfrivolously allege that she made a protected disclosure, she did not reach contributing factor.

¶7    We agree with the administrative judge's finding that the appellant exhausted her remedies before OSC, ID at 2, and the parties have not challenged this finding on review. As set forth below, we disagree with the administrative judge's remaining findings.

The appellant nonfrivolously alleged that she made protected disclosures and engaged in protected activity under 5 U.S.C. § 2302(b)(8), (9).

¶8    Before the administrative judge, the appellant submitted a copy of her OSC complaint and correspondence with OSC. IAF, Tab 2. On review, she has clarified the alleged whistleblowing raised before OSC as follows: (1) on an unspecified date, she reported to the Office of Inspector General (OIG), via hotline and during an in-person visit, that an agency employee sexually abused a patient; (2) on or around November 5, 2017, she reported to an agency employee that the agency's infection control procedures were deficient, including her observations of unsanitary conditions, hospital-acquired patient infection and death, the sale of expired food and medications to patients, and roach infestations; (3) in or around November 2017, she reported to "disruptive behavior, bullying, intimidation, and allegations of a hostile work environment" to "a variety of [a]gency personnel"; (4) on an unspecified date, the appellant reported to the OIG and OSC, among others, that a supervisor sexually harassed

her; (5) in or around January 2018, she reported to agency privacy officers that agency staff improperly accessed her medical records; and (6) on or around August 2018, the appellant reported to the OIG criminal activity by agency employees, including stolen equipment and use of Government resources for personal gain. PFR File, Tab 1 at 6-10 (citing IAF, Tab 2 at 12-34).

¶9        We find that allegations 1, 4, and 6,[2] concerning reports made to the OIG and OSC, constitute nonfrivolous allegations of protected activity under 5 U.S.C. § 2302(b)(9)(C).[3] IAF, Tab 2 at 16, 28-29; PFR File, Tab 1 at 7-8; *see Fisher v. Department of the Interior*, 2023 MSPB 11, ¶ 8 (finding that, under the broadly worded provision of 5 U.S.C. § 2302(b)(9)(C), any disclosure of information to the OIG or OSC is protected, regardless of its content, as long as such disclosure is made in accordance with applicable provisions of law).

¶10        As to allegation 2, we find that the appellant has nonfrivolously alleged that she made a protected disclosure under 5 U.S.C. § 2302(b)(8)(A)(ii) when she reported to an agency employee that the infection control procedures at the medical center were deficient, including her observations of unsanitary conditions, hospital-acquired patient infection and death, the sale of expired food and medications to patients, and roach infestations. IAF, Tab 2 at 18, 23-24, 55; PFR File, Tab 1 at 7. The appellant has alleged that some of her concerns were

---

[2] Concerning allegations 1 and 4, the appellant has not identified the date that she made her purported disclosures to the OIG and OSC. IAF, Tab 2 at 16-17; PFR File, Tab 1 at 7. She appears to allege that she made disclosures to the OIG from November 2017 through 2018. IAF, Tab 2 at 16, 59. Effective December 12, 2017, 5 U.S.C. § 2302(b)(9)(C) was amended pursuant to the National Defense Authorization Act for Fiscal Year 2018, Pub. L. No. 115-91, 131 Stat. 1283 (2017), to expand whistleblower protection for disclosures made to "any [ ] component responsible for internal investigation or review." The amendment does not affect our analysis because the appellant has alleged that she made disclosures to the OIG and OSC, which would be protected under either version of the law, regardless of the date of the disclosures.

[3] On review, the appellant argues that allegation 4 is protected under 5 U.S.C. § 2302(b)(8). PFR File, Tab 1 at 10-11. We disagree. *See Edwards v. Department of Labor*, 2022 MSPB 9, ¶¶ 10-20 (concluding that disclosures about discrimination prohibited by Title VII are excluded from protection under 5 U.S.C. § 2302(b)(8)), *aff'd*, No. 22-1967 (Fed. Cir. July 7, 2023).

substantiated in a June 2018 OIG report and that an agency study concluded that a veteran admitted to the facility where the appellant worked had a 40% increased chance of dying as compared to another Veterans Affairs medical center. IAF, Tab 2 at 18. A disinterested observer with knowledge of the essential facts known to and readily ascertainable by the appellant, in her role as Infection Control Nurse, could find that such conditions in a hospital setting constitutes a substantial and specific danger to public health or safety. *See Miller v. Department of Homeland Security*, 111 M.S.P.R. 312, ¶¶ 5-6 (2009) (holding that a disclosure regarding danger to the public must be both substantial and specific to be protected and, normally, disclosure of an imminent event is protected).

¶11    As to allegation 3, the appellant alleges that she reported disruptive behavior and "bullying, intimidation, hostile work environment, and whistleblower retaliation" to various agency personnel. IAF, Tab 2 at 53-54. The appellant has not provided any further context to this allegation either before the administrative judge or on review. *Id.*; PFR File, Tab 1 at 9. We find that this vague and nonspecific allegation is insufficient to constitute a nonfrivolous allegation of a protected disclosure. *See Gabel v. Department of Veterans Affairs*, 2023 MSPB 4, ¶¶ 6-7 (explaining that disclosures must be specific and detailed, not vague allegations of wrongdoing).

¶12    Turning to allegation 5, the appellant alleges that she disclosed to agency privacy officers that agency staff mishandled her medical records. IAF, Tab 2 at 27; PFR File, Tab 1 at 8. Specifically, she alleges that she "noticed that staff had accessed my medical records when they had no involvement in my care" and the "access did not coincide with appointments [ ] or care visits." IAF, Tab 2 at 27. Federal laws such as the Health Insurance Portability and Accountability Act ensure that patient health information is properly protected by medical facilities. There is no evidence that the appellant is an expert in the nuances of privacy law. We find that, under these circumstances and given the information ascertainable by the appellant, a reasonable person could believe that

agency staff violated a law, rule, or regulation by improperly accessing medical records. We therefore find that she has nonfrivolously alleged that she made a protected disclosure pursuant to 5 U.S.C. § 2302(b)(8)(A)(i).

<u>The appellant has nonfrivolously alleged that her protected disclosures or activity were contributing factors in the alleged personnel actions.</u>

¶13 The appellant alleges that, because of her protected whistleblowing, the agency subjected her to a disciplinary written counseling, denial of a promotion and training, an involuntary transfer, and termination during her probationary period. IAF, Tab 2 at 15-45; PFR File, Tab 1 at 12. We find that she had made a nonfrivolous allegation that she was subjected to personnel actions covered by 5 U.S.C. § 2302(a)(2)(A). *See Skarada v. Department of Veterans Affairs*, 2022 MSPB 17, ¶ 14; *see also Campo v. Department of the Army*, 93 M.S.P.R. 1, ¶¶ 7-8 (2002) (holding that a counseling memorandum can constitute a personnel action if it warns of future discipline).

¶14 As to contributing factor, the appellant asserts that she meets the knowledge/timing test. PFR File, Tab 1 at 12-13. She has asserted that the Medical Director, D.D., and agency employee, M.H., were aware of her protected disclosures and OIG activity pursuant to their roles in responding to the appellant's OIG complaints. IAF, Tab 2 at 16-17. She has alleged that D.D. and M.H. were involved in the written counseling, denial of promotion and training, and involuntary transfer. *Id.* at 20-21. The record evidence reflects that the Medical Director, D.D., was involved in the decision to terminate the appellant's employment. *Id.* at 71-72. As to the timing prong, it appears that the appellant began engaging in protected whistleblowing in or around November 2017 and was subjected to various alleged personnel actions thereafter, culminating in her September 2018 removal. *Id.* at 64, 71-72. The Board has found that personnel actions taken within approximately 1 to 2 years of the appellant's disclosures satisfy the knowledge/timing test. *See Mastrullo v. Department of Labor*, 123 M.S.P.R. 110, ¶ 21 (2015). We therefore find that the appellant has

nonfrivolously alleged under the knowledge/timing test that her protected whistleblowing was a contributing factor to the personnel actions and that she has established jurisdiction over her IRA appeal.

## ORDER

¶15      For the reasons discussed above, we remand this case to the regional office for further adjudication in accordance with this Remand Order.  On remand, the administrative judge shall adjudicate this appeal on the merits, including holding the hearing requested by the appellant.  She shall address the appellant's claim that her whistleblowing allegations numbered 1, 2, 4, 5, and 6, above, were a contributing factor in the various personnel actions listed herein.

FOR THE BOARD:                    _Gina K. Grippando_
                                 _____
                                 Gina K. Grippando
                                 Clerk of the Board

Washington, D.C.