**UNITED STATES OF AMERICA
MERIT SYSTEMS PROTECTION BOARD**

ROBERT JOHN WALSH, JR.,
         Appellant,

     v.

DEPARTMENT OF THE TREASURY,
         Agency.

DOCKET NUMBER
DC-1221-21-0453-W-2

DATE: March 19, 2024

# THIS ORDER IS NONPRECEDENTIAL[1]

<u>Robert John Walsh, Jr.</u>, Fredericksburg, Virginia, pro se.

<u>Mark R. Hoggan</u>, Esquire, and <u>Michael A. Battle</u>, Esquire, Fort Worth, Texas, for the agency.

**BEFORE**

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman

**REMAND ORDER**

¶1      The appellant has filed a petition for review of the initial decision, which denied his request for corrective action in his Individual Right of Action (IRA) appeal. For the reasons discussed below, we GRANT the appellant's petition for review, REVERSE the finding that the appellant did not exhaust his administrative remedies with the Office of Special Counsel (OSC) regarding his

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

January and August 2019 disclosures, VACATE the finding that the agency proved by clear and convincing evidence that it would have taken the same personnel actions in the absence of the appellant's protected disclosures, and REMAND the case to the Washington Regional Office for further adjudication in accordance with this Remand Order.

## BACKGROUND

¶2      The appellant is a GS-14 Risk Management Specialist with the Bureau of Engraving and Printing (BEP) in the agency's Washington, D.C. currency facility (DCF). *Walsh v. Department of the Treasury*, MSPB Docket No. DC-1221-21-0453-W-1, Initial Appeal File (IAF), Tab 7 at 90-95; Hearing Recording, dated June 2, 2022 (HR-2) (testimony of the appellant). The agency maintains two currency facilities: the Washington, D.C. currency facility and the Western currency facility, located in Fort Worth, Texas. IAF, Tab 7 at 5, 23. In 2013, the Board of Governors of the Federal Reserve System (Board of Governors) requested that DCF halt production on the Next Generation $100 (NXG $100) bills "due to persistent quality problems." *Walsh v. Department of the Treasury*, MSPB Docket No. DC-1221-21-0453-W-2, Appeal File (W-2 AF), Tab 10 at 46. As part of its effort to improve quality control, BEP created a Change Control Board (CCB), which was designed to govern and control changes proposed to the agency's currency manufacturing processes. *Id.*; IAF, Tab 7 at 71. The agency also created the Correction Action and Preventative Action (CAPA) process, a reporting program designed to address issues of nonconformity, or potential issues of nonconformity in the change control process. IAF, Tab 7 at 20.

¶3      In 2016, the appellant was appointed as the chair of the CCB by the head of the agency's Manufacturing Directorate. HR-2 (testimony of the appellant); Hearing Recording, dated June 1, 2022 (HR-1) (testimony of the DCF Chief of Currency Manufacturing). During his tenure as the CCB Chair, the appellant raised numerous concerns about the change control process, including, but not

limited to, the delay in revisions to the CCB charter, which prevented the CCB from addressing weakness in the change control process, and the agency's lack of response to his CAPA reports. *See e.g.*, W-2 AF, Tab 21 at 8-9, 18-25, 88-89, 110-24. On October 1, 2018, the DCF Chief of Currency Manufacturing made the decision to remove the appellant as chair of the CCB. HR-1 (testimony of the DCF Chief of Currency Manufacturing).

¶4        On December 19, 2018, the BEP Director issued a statement of readiness to the Board of Governors, claiming that the DCF was ready to resume "planning for initial limited and controlled production of [NXG $100] notes" citing to, among other things, the quality controls implemented since 2013, a certification from the International Organization for Standardization, and a successful internal audit of the $10 verification and validation. W-2 AF, Tab 21 at 126-28. Therefore, the BEP Director requested that the Board of Governors initiate its independent audit process to confirm DCF's readiness to resume NXG $100 production.[2] *Id.* at 128. The appellant raised concerns about the contents of the letter, asserting that the BEP Director was improperly relying on the $10 verification and validation audit results, and claiming that DCF was not ready to resume NXG $100 production because it had not adequately addressed weaknesses in quality control. HR-2 (testimony of the appellant); *see e.g.*, W-2 AF, Tab 10 at 10, Tab 15 at 12-15.

¶5        On or about January 24, 2019, the appellant addressed the BEP Director during a town hall meeting, challenging, among other things, his comments that the agency's quality controls were a success, and asserting that the agency had not addressed numerous areas of weakness in its change control procedures, including complaining about the agency's lack of response to CAPAs. W-2 AF, Tab 36. On February 4, 2019, the Chief of the Office of Quality Operations issued the appellant a professional counseling admonishing the appellant for his "disruptive and disrespectful behavior" during the town hall, accusing him of

---

[2] BEP could not resume the production at DCF without a third-party assessment confirming its readiness, and the Board of Governors agreeing to resume production. W-2 AF, Tab 21 at 126-28, Tab 28 at 18.

engaging with the BEP Director in "a combative and confrontational barrage of complaints" and "grandstanding." IAF, Tab 7 at 34-35. Then, on August 28, 2019, the appellant sent an email to all BEP chiefs, managers, members of the Senior Executive Team, and the Associate Director of Quality, in which he summarized his comments during the town hall, attached a copy of his professional counseling, and accused the BEP Director of falsely claiming the CCB was a success. W-2 AF, Tab 24 at 40-42.

¶6      On September 10, 2019, the Chief of the Office of Quality Operations issued the appellant a letter of reprimand based on unprofessional conduct for his August 28, 2019 email. IAF, Tab 7 at 36-37. He also issued the appellant a direct order, instructing him to refrain from using BEP email, BEP phone, BEP blog, or any other type of agency media "to discuss any grievance or complaint with any segment of the BEP workforce," with the exceptions of his supervisory chain, the Office of Inspector General, Congress, the Equal Employment Opportunity Commission or Equal Employment Opportunity personnel, or OSC. *Id.* at 38-39. However, on April 1, 2020, the appellant sent two separate emails to an agency distribution list concerning resuming currency production during the COVID-19 pandemic. *Id.* at 40-44. Because these emails violated the agency's direct order issued to the appellant, on May 21, 2020, the Chief of the Office of Quality Operations issued the appellant a 7-day proposed suspension.[3] *Id*. at 29-33.

¶7      On or about March 18, 2019, the appellant filed a complaint with OSC, claiming that in retaliation for his disclosures about the CCB and the weaknesses in the agency's change control process and quality management system, the agency retaliated against him. IAF, Tab 1 at 26-30. After OSC issued him a close-out letter, the appellant timely filed an IRA appeal with the Board. IAF, Tab 1. The administrative judge notified the appellant of the applicable

---

[3] On June 9, 2021, the agency rescinded the proposed 7-day suspension and direct order regarding the use of various agency systems and media. IAF, Tab 7 at 19.

jurisdictional standard, and after allowing the parties to respond, he found that the appellant made a nonfrivolous allegation that he made protected disclosures during his tenure as the CCB chair regarding weaknesses in the CCB and CAPA process, as well as the agency's overall quality control process, and that these protected disclosures were a contributing factor in the following personnel actions: (1) his removal as the CCB Chair; (2) the professional counseling; (3) the letter of reprimand; and (4) the proposed 7-day suspension. IAF, Tabs 3, 11.

¶8 After holding a hearing, the administrative judge issued an initial decision denying the appellant's request for corrective action. W-2 AF, Tab 51, Initial Decision (ID). First, the administrative judge found that the appellant reasonably believed that his reports of deviations from the CCB process and CAPA's ineffectiveness evidenced gross mismanagement, because these deviations could potentially result in unauthorized changes to currency production. ID at 15-17. He therefore concluded that the appellant proved he made protected disclosures during his tenure as the CCB chair, i.e., from 2016 to 2018. ID at 17. He then found that the appellant proved that his protected disclosures were a contributing factor in the four identified personnel actions. ID at 17, 22-23. The administrative judge also found that the appellant did not claim in his OSC complaint that he was retaliated against for his disclosures at the January 2019 town hall or in his August 2019 email, and thus, the Board lacked jurisdiction over those claims.[4] ID at 27.

¶9 Next, the administrative judge found that the agency proved by clear and convincing evidence that it would have taken the same personnel actions in the absence of the appellant's protected disclosures. ID at 17-31. Specifically, the administrative judge found that the agency presented strong evidence in support of its personnel actions, for instance, that it removed the appellant from the CCB

---

[4] This finding was made in the administrative judge's analysis of the second *Carr* factor regarding the September 2019 letter of reprimand. ID at 27.

based on operational needs, that it issued him a professional counseling and written reprimand due to exhibited misconduct, and that it issued him a proposed 7-day suspension because he violated a direct order.  ID at 17-20, 23-30. Furthermore, the administrative judge found that the agency officials involved in the personnel actions had, at most, a limited institutional motive to retaliate and explained that even though the agency failed to present comparator evidence, such lack of evidence was not detrimental or fatal to the agency's case.[5]  ID at 20-21, 25, 27-28, 30-31.  Therefore, the administrative judge found that the agency met its burden of proof by clear and convincing evidence and denied the appellant's request for corrective action.  ID at 31.

¶10    The appellant filed a petition for review arguing, among other things, that the agency did not meet its clear and convincing burden because the evidence establishes that the personnel actions were retaliatory.[6]  Petition for Review

---

[5] The administrative judge also found that the appellant's actions and conduct were so unique that the appellant was in a "class of one," and therefore, comparator evidence would not be readily available.  ID at 21, 25, 31.  The administrative judge relied on *Soto v. Department of Veterans Affairs*, 2022 MSPB 6, ¶ 18 n.9, in which the Board opined that there could be a situation in which "the agency may present persuasive evidence that no appropriate comparators exist."  ID at 21.  Here, the administrative judge made the finding that the appellant was in a "class of one" without the agency presenting any such evidence.  However, the administrative judge ultimately found that lack of comparator evidence was not detrimental or fatal to the agency's case.  ID at 21, 27-28, 31.  This finding does not run afoul of the relevant case law, which holds that the third *Carr* factor cannot weigh in favor of the agency if the agency fails to produce comparator evidence.  *See Smith v. General Services Administration*, 930 F.3d 1359, 1367 (Fed. Cir. 2019).  Therefore, because the third *Carr* factor was not weighed in favor of the agency, any error by the administrative judge in finding that the appellant was a "class of one" does not provide a basis for reversal.  *Panter v. Department of the Air Force*, 22 M.S.P.R. 281, 282 (1984) (explaining that an adjudicatory error that is not prejudicial to a party's substantive rights provides no basis for reversal of an initial decision).

[6] The appellant also argues that the administrative judge abused his discretion by denying his request for members of the agency's Office of General Counsel to testify.  PFR File, Tab 3 at 20-21.  It is well established that an administrative judge has wide discretion under the Board's regulations to exclude witnesses when it has not been shown that their testimony would be relevant, material, and nonrepetitious.  *Franco v. U.S. Postal Service*, 27 M.S.P.R. 322, 325 (1985); *see* 5 C.F.R. § 1201.41(b)(8), (10). The appellant has presented no evidence or argument demonstrating the relevancy of

(PFR) File, Tab 3 at 7-20. The agency responded in opposition to the appellant's petition for review. PFR File, Tab 5.

## DISCUSSION OF ARGUMENTS ON REVIEW

The appellant exhausted his administrative remedies with respect to his disclosures in the January 2019 town hall and the August 2019 email.

¶11    To satisfy the exhaustion requirement of 5 U.S.C. § 1214(a)(3), an appellant must have provided OSC with a sufficient basis to pursue an investigation into his allegations of whistleblower reprisal. *Skarada v. Department of Veterans Affairs*, 2022 MSPB 17, ¶ 7; *Chambers v. Department of Homeland Security*, 2022 MSPB 8, ¶ 10. Generally, exhaustion can be demonstrated through the appellant's OSC complaint, evidence the original complaint was amended, including but not limited to OSC's determination letter and other letters from OSC referencing any amended allegations, and the appellant's written responses to OSC. *Skarada*, 2022 MSPB 17, ¶ 7; *Mason v. Department of Homeland Security*, 116 M.S.P.R. 135, ¶ 8 (2011). Alternatively, exhaustion may be proven through other sufficiently reliable evidence, such as an affidavit attesting that the appellant raised with OSC the substance of the facts in his Board appeal. *Skarada*, 2022 MSPB 17, ¶ 7; *Chambers*, 2022 MSPB 8, ¶ 11.

¶12    Contrary to the administrative judge's findings, ID at 27, we find that the appellant exhausted his administrative remedies regarding his disclosures made in the January 2019 town hall and in his August 2019 email. First, in his response to the administrative judge's jurisdictional order, which was sworn under penalty of perjury, the appellant confirmed that he amended his complaint to include the September 2019 letter of reprimand and the direct order, both of which were issued in response to his August 2019 email. IAF, Tab 6 at 3-4. Furthermore, the record contains an email to the OSC investigator in which the appellant claimed

these witnesses, and thus, there is no evidence that the administrative judge abused his discretion. PFR File, Tab 3 at 20-21.

he was reprimanded for challenging the BEP Director during the January 2019 town hall meeting. W-2 AF, Tab 13 at 97-98.

¶13 The professional counseling and the letter of reprimand are inextricably intertwined with the January 2019 town hall and the August 2019 email because the personnel actions were issued as a direct response to these incidents. Therefore, because the appellant raised the professional counseling and the letter of reprimand with OSC, he necessarily raised the basis of these personnel actions with OSC, i.e., the January 2019 town hall and the August 2019 email. Thus, we find that the appellant exhausted his administrative remedies because he provided OSC with sufficient basis to pursue an investigation into a claim that he was retaliated against for his disclosures made at the January 2019 town hall and in his August 2019 email.

Remand is necessary for the administrative judge to apply the whistleblower protection analytical framework to the appellant's January and August 2019 disclosures and to determine the applicability of 5 U.S.C. § 2302(f)(2).

¶14 The administrative judge did not apply the whistleblower protection analytical framework to the appellant's disclosures made at the January 2019 town hall or in his August 2019 email. Therefore, on remand, the administrative judge shall determine whether the appellant established that his January and August 2019 disclosures were protected, and if so, whether they were a contributing factor in any of the four identified personnel actions. 5 U.S.C. § 1221(e)(1); *Salazar v. Department of Veterans Affairs*, 2022 MSPB 42, ¶ 23. The administrative judge shall also consider whether the appellant made any of his disclosures during the normal course of his duties as a Risk Management Analyst, and thus, whether the higher burden of proof set forth in 5 U.S.C. § 2302(f)(2) is applicable.[7] If the administrative judge determines that section 2302(f)(2) applies, and the appellant's disclosures are not protected under

---

[7] In determining the applicability of 5 U.S.C. § 2302(f)(2), the administrative judge should consider the Board's guidance set forth in *Salazar*, 2022 MSPB 42, and *Williams v. Department of Defense*, 2023 MSPB 23.

the higher burden of proof, then the administrative judge must end his or her analysis. *See Clarke v. Department of Veterans Affairs*, 121 M.S.P.R. 154, ¶ 19, n.10 (2014) (stating that the Board may not proceed to the clear and convincing evidence test in the absence of a finding that the appellant established a prima facie case of whistleblower reprisal), *aff'd per curiam*, 623 F. App'x 1016 (Fed. Cir. 2015). However, if the administrative judge finds that section 2302(f)(2) does not apply, or that section 2302(f)(2) applies and the appellant's disclosures are protected under the higher burden of proof, then the administrative judge shall consider whether the agency met its burden by clear and convincing evidence regarding the four accepted personnel actions. 5 U.S.C. § 1221(e)(1)-(2); *Salazar*, 2022 MSPB 42, ¶ 34.

¶15    The administrative judge shall hold a supplemental hearing and allow the parties the opportunity to address the applicability of 5 U.S.C. § 2302(f)(2). The administrative judge may also hold a supplemental hearing regarding any other matters that he or she deems necessary. A new initial decision must then be issued, identifying all material issues of fact and law, summarizing the evidence, resolving issues of credibility, and setting forth the administrative judge's conclusions of law and his or her legal reasoning, as well as the authorities on which that reasoning rests. *Spithaler v. Office of Personnel Management*, 1 M.S.P.R. 587, 589 (1980). To the extent that it is consistent with this order, the administrative judge may incorporate the prior findings related to the appellant's 2016-2018 protected disclosures in the remand initial decision. However, regardless, if the administrative judge discerns that any of the evidence or argument on remand impacts the analysis of the issues in this appeal, he or she should address such argument or evidence in the remand initial decision.

## ORDER

¶16      For the reasons discussed above, we remand this case to the Washington Regional Office for further adjudication in accordance with this Remand Order.

FOR THE BOARD:

*Gina K. Grippando*

_____

Gina K. Grippando
Clerk of the Board

Washington, D.C.