## UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

AMANDA ALLRED,
           Appellant,

      v.

DEPARTMENT OF THE ARMY,
          Agency.

DOCKET NUMBER
SF-1221-22-0301-W-1

DATE: April 16, 2024

# THIS ORDER IS NONPRECEDENTIAL[1]

<u>Kellee B. Kruse</u>, Esquire, Washington, D.C., for the appellant.

<u>Roni R. Reed</u>, Esquire, Walla Walla, Washington, for the agency.

**BEFORE**

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman

**REMAND ORDER**

The appellant has filed a petition for review of the initial decision, which dismissed her individual right of action (IRA) appeal for lack of jurisdiction. For the reasons discussed below, we GRANT the appellant's petition for review, VACATE the initial decision, and REMAND the case to the regional office for further adjudication in accordance with this Remand Order.

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

## BACKGROUND

The appellant is a GS-12 Land Surveyor with the agency. Initial Appeal File (IAF), Tab 1 at 1, 6. The appellant made the following allegations before the administrative judge. In August 2021, the appellant witnessed a coworker, R.B., mishandling expensive equipment. *Id.* at 7-8. The appellant reported this observation to her supervisor and stated that R.B. had been hostile to her in the field. *Id.* In September 2021, the appellant told R.B. that he had improperly configured a piece of equipment, which resulted in inconsistencies in his data collection. *Id.* at 8. R.B. threatened to quit because of the appellant's comments. *Id.* On October 13, 2021, the appellant's supervisor sent her a letter of counseling based, in part, on "condescending and dismissive" behavior toward R.B. in September 2021. *Id.*; IAF, Tab 6 at 65. On the same day, the appellant's supervisor asked her to approve land surveys conducted by R.B., which made the appellant uncomfortable because she believed that R.B. was not qualified to complete the surveys without supervision. IAF, Tab 1 at 8-9.

On or around December 15, 2021, the appellant learned that R.B. was completing additional unsupervised surveys, which she believed he was unqualified to complete. *Id.* at 9. The appellant had previously offered to complete the surveys herself, but her supervisor refused to provide the required funding. *Id.* On or around December 16, 2021,[2] the appellant told her supervisor that she would no longer approve R.B.'s surveys if he completed them without supervision. *Id.* During a meeting with her supervisor on this date, the appellant explained that R.B. "lacked the industry knowledge to complete" the surveys and reiterated her concerns that R.B.'s surveys were not accurate. *Id.*

On January 13, 2022, the appellant sent an email to her supervisor reiterating concerns about the agency's survey practices, wherein she stated that the agency was not in compliance with relevant law and guidelines. IAF,

---

[2] The appellant asserts in her initial appeal that this event occurred on December 16, 2022. IAF, Tab 1 at 9. This appears to be a typographical error.

Tab 7 at 556-57. She stated that land surveys were being conducted without her knowledge or oversight, in violation of numerous policies and the Brooks Act, and that she was improperly being asked to sign off on these projects, which could result in the loss of her professional licenses. *Id*.

The appellant filed a whistleblower retaliation complaint with the Office of Special Counsel (OSC) on January 19, 2022. IAF, Tab 1 at 11. After receiving a close-out letter on February 8, 2022, the appellant filed a Board appeal and requested a hearing. *Id*. at 2, 11. The administrative judge issued a jurisdictional order and the appellant filed documents and argument in response. IAF, Tabs 3, 6-7, 12. After reviewing the appellant's pleadings, the administrative judge found that the appellant alleged the following protected disclosures: (1) on or around August 3, 2021, the appellant reported R.B.'s mishandling of agency equipment; (2) in or around September 2021, the appellant disclosed to her supervisor that the agency was using a non-certified land surveyor; (3) on or around September 27, 2021, the appellant reported that R.B. was not properly configuring land survey equipment, which could result in inaccurate results; (4) in or around September 2021, the appellant reported to her supervisor that she was being asked to certify work that she did not oversee in violation of the Code of Ethics of Professional Land Surveyors as outlined by Washington State law; (5) on or around December 16, 2021, the appellant disclosed that allowing R.B. to conduct surveys without supervision violated state law and U.S. Army Corps of Engineers (USACE) manuals and she told her supervisor that she refused to certify land surveys that she did not oversee; (6) on January 12, 2022, the appellant disclosed to the equal employment opportunity (EEO) office that she was being pressured to sign off on surveys she did not oversee; and (7) on or around January 13, 2022, the appellant reiterated to her supervisor by email that the agency was violating ethical standards, USACE engineering manuals, Washington State law, and the Brooks Act. IAF, Tab 15, Initial Decision (ID) at 4-5. The administrative judge found that the appellant

alleged the following retaliatory personnel actions: (1) the agency excluded the appellant from projects that require a certified professional land surveyor; (2) the agency repeatedly asked the appellant to sign off on projects that she did not supervise; (3) the agency issued the appellant a letter of counseling on October 13, 2021; (4) the agency refused to authorize funding for the appellant to conduct land surveys in the field; and (5) the agency allowed R.B. to conduct land surveys without the proper authorization.[3] ID at 5.

Without holding a hearing, the administrative judge issued an initial decision dismissing the appeal for lack of jurisdiction. ID. Regarding the alleged disclosures, the administrative judge found that the appellant proved exhaustion over the September 2021 disclosures, i.e., Disclosures 2-4, and no others. ID at 8-9. She found that the appellant exhausted each of the alleged personnel actions. *Id.* She found, however, that the appellant failed to nonfrivolously allege that the September 2021 disclosures were protected under 5 U.S.C. § 2302(b)(8). ID at 11-19. Although the administrative judge found that the appellant failed to establish jurisdiction over her appeal because she did not nonfrivolously allege that her disclosures were protected, the administrative judge made an alternative finding that, even if the disclosures were protected, the appellant did not make a nonfrivolous allegation that she was subjected to a personnel action covered by 5 U.S.C. § 2302(a)(2)(A). ID at 19-29.

The appellant has filed a petition for review, the agency has filed a response, and the appellant has filed a reply. Petition for Review (PFR) File, Tabs 1, 5-6.

## DISCUSSION OF ARGUMENTS ON REVIEW

The Board has jurisdiction over an IRA appeal if the appellant has exhausted her administrative remedies before OSC and makes nonfrivolous allegations that (1) she engaged in whistleblowing activity by making a disclosure

---

[3] On review, the appellant has not challenged the administrative judge's summary of the alleged disclosures and personnel actions. Petition for Review File, Tab 1 at 10-11.

protected under 5 U.S.C. § 2302(b)(8) or engaged in protected activity under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D), and (2) the disclosure was a contributing factor in the agency's decision to take or fail to take a personnel action as defined by 5 U.S.C. § 2302(a). *Edwards v. Department of Labor*, 2022 MSPB 9, ¶ 8, *aff'd*, No. 2022-1967, 2023 WL 4398002 (Fed. Cir. July 7, 2023). The question of whether the appellant has made a nonfrivolous allegation at the jurisdictional stage is based on whether she alleged sufficient factual matter, accepted as true, to state a claim that is plausible on its face. *See Hessami v. Merit Systems Protection Board*, 979 F.3d 1362, 1368-69 (Fed. Cir. 2020). Any doubt or ambiguity as to whether the appellant made nonfrivolous jurisdictional allegations should be resolved in favor of finding jurisdiction. *See Skarada v. Department of Veterans Affairs*, 2022 MSPB 17, ¶ 6. For the reasons set forth herein, we find that the appellant has established jurisdiction over her IRA appeal, and we remand the matter to the regional office for a hearing on the merits.

<u>The appellant has exhausted her claims with OSC.</u>

An appellant in an IRA appeal must exhaust her administrative remedies by seeking corrective action from OSC before seeking corrective action from the Board. 5 U.S.C. § 1214(a)(3). The substantive requirements of exhaustion are met when an appellant provided OSC with a sufficient basis to pursue an investigation; however, an appellant may give a more detailed account of her whistleblowing activity before the Board than she did to OSC. *Chambers v. Department of Homeland Security*, 2022 MSPB 8, ¶ 10 (2022). An appellant may demonstrate exhaustion through her initial OSC complaint, correspondence with OSC, or other sufficiently reliable evidence, such as an affidavit or declaration attesting that the appellant raised with OSC the substance of the facts in the Board appeal. *Id.*, ¶ 11. Exhaustion must be proved by preponderant evidence. *Id.*; 5 C.F.R. § 1201.57(c)(1).

In her OSC complaint, the appellant alleged that the agency was conducting land surveys without her knowledge, excluding her from assignments, and coercing her to sign off on projects that she did not oversee. IAF, Tab 6 at 17, 26. She also stated to OSC that she had reported a hostile coworker and that the agency retaliated against her by issuing a letter of counseling, subjecting her to a hostile work environment, and changing her duties and working conditions. *Id.* In response to OSC's preliminary determination, the appellant added that "there are serious ethical concerns and violations that unqualified and inexperienced personnel are performing land surveying without supervision" and that "[t]he letter of counseling referenced in my complaint is only one part of a pattern of harassment that has been ongoing since at least September 2021." *Id.* at 58-62.

We find that the appellant's filings were sufficient to provide OSC with a basis to pursue an investigation. *See Chambers*, 2022 MSPB 8, ¶ 10. The claims raised before the administrative judge, as summarized in the initial decision, ID at 4-5, are substantively similar to the allegations raised before OSC, IAF, Tab 6 at 17, 26, 58-62. Although, in her correspondence with OSC, the appellant did not explicitly reference her allegation that R.B. mishandled equipment in August 2021, we find that OSC had a sufficient basis to pursue an investigation of this allegation because it is part of the same disclosure wherein the appellant complained to her supervisor about R.B.'s hostility, which is explicitly referenced in her OSC complaint. *Id.* at 26; IAF, Tab 7 at 5 (explaining that the appellant reported to her supervisor that R.B. was hostile to her in the field and that he had mishandled equipment). Accordingly, we find that the appellant has exhausted her alleged protected disclosures with OSC. We also find, as did the administrative judge, that the appellant exhausted the alleged personnel actions with OSC. ID at 9.

<u>The appellant nonfrivolously alleged that she made protected disclosures pursuant to 5 U.S.C. § 2302(b)(8).</u>

At the jurisdictional stage, an appellant may show that she made a protected disclosure by nonfrivolously alleging that she made a disclosure that she reasonably believed evidences a violation of law, rule, or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health and safety. *See* 5 U.S.C. § 2302(b)(8); *see also Mudd v. Department of Veterans Affairs*, 120 M.S.P.R. 365, ¶ 5 (2013). The proper test for determining whether an employee had a reasonable belief that her disclosures were protected is whether a disinterested observer with knowledge of the essential facts known to, and readily ascertainable by, the employee could reasonably conclude that the actions evidenced one of the categories of wrongdoing set forth in 5 U.S.C. § 2302(b)(8). *See Salazar v. Department of Veterans Affairs*, 2022 MSPB 42, ¶ 24.

*Disclosure 1*

The appellant's first disclosure concerns R.B.'s alleged mishandling of survey equipment, including "allowing a GPS receive[r] and a range pole, worth over $10,000, to bounce unrestrained in the back of his pick-up truck." IAF, Tab 1 at 7-8. The appellant stated that she worried about unnecessary damage to the survey equipment, which could impact measurements in the field. IAF, Tab 7 at 5. The appellant has not alleged that the equipment was in fact damaged due to the alleged mishandling.

In her jurisdictional response, the appellant argued that R.B.'s mishandling of equipment, "both separated and together" with other allegations, evidence violations of agency guidelines, the Code of Ethics of Professional Land Surveyors, and the minimum standards outlined in Washington State codes, regulations, and law. *Id.* at 13. Aside from this conclusory allegation, which is insufficient to meet the nonfrivolous allegation standard, the appellant has not explained how R.B.'s behavior violated a law, rule, regulation, or policy. *See El*

*v. Department of Commerce*, 123 M.S.P.R. 76, ¶¶ 6-8 (2016) (finding that vague, conclusory, unsupported, and pro forma allegations of alleged wrongdoing do not meet the nonfrivolous allegation pleading standard).

To the extent the appellant asserts that R.B.'s conduct, as described in this disclosure, presents a danger to public health and safety, we find that she has failed to make a nonfrivolous allegation of such. In determining whether an appellant has nonfrivolously alleged that a disclosure evidenced a substantial and specific danger to public health or safety, the Board considers the following factors: (1) the likelihood of harm resulting from the danger; (2) when the alleged harm may occur; and (3) the nature of the potential harm. *See Skarada*, 2022 MSPB 17, ¶ 12 n.3. The appellant's allegation is so vague that the Board is unable to determine the likelihood of harm resulting from the danger, the imminence of any potential harm, and the nature of the potential harm. Any danger resulting from R.B.'s alleged failure to restrain equipment in his truck is too speculative to support a finding of jurisdiction over this allegation. *See Schoenig v. Department of Justice*, 120 M.S.P.R. 318, ¶ 10 (2013) (explaining that, although a disclosure of an imminent event is protected, a disclosure of speculative danger is not).

Finally, to the extent the appellant alleges that R.B.'s failure to properly restrain equipment constitutes a gross waste of funds, we find that she failed to nonfrivolously allege that the agency expended resources that are significantly out of proportion to the benefit reasonably expected to accrue to the Government. *See Webb v. Department of the Interior*, 122 M.S.P.R. 248, ¶ 10 n.3 (2015). Although the appellant has alleged that R.B. mishandled expensive equipment, she has not alleged that the equipment was damaged or destroyed resulting in a loss of funds. Accordingly, we find that the appellant has failed to nonfrivolously allege that this disclosure is protected under 5 U.S.C. § 2302(b)(8).

*Disclosures 2-7*

The appellant's remaining disclosures involve concerns regarding the agency's selection of personnel to conduct land surveys, inaccurate survey results, and improper requests for the appellant to sign off on surveys that she did not oversee. ID at 4-5. Although the appellant made these disclosures on several dates between September 2021, and January 2022, the subject of the disclosures is similar, and thus, we consider them together. *Id.*

The core of the appellant's complaints was that unlicensed and/or unqualified personnel were performing work that required licensing. IAF, Tab 7 at 556, Tab 12 at 6, 20. She alleged, both to the agency and in her jurisdictional response before the administrative judge, that R.B. was not qualified to conduct land surveys on his own and that the agency improperly asked her to sign off on surveys that she did not oversee, which put her license at risk. IAF, Tab 7 at 556. She also alleged that she observed R.B. improperly configuring equipment, which resulted in inconsistencies in his data collection. *Id.* at 5-6. She alleged that one of the agency's projects involved pump plants, which controlled the water level of levies, and that incorrect measurements by as little as 1/1,000th of a foot could cause flooding, like the damage caused by Hurricane Katrina in New Orleans. *Id.* at 5. The appellant alleged that the agency's conduct violated agency policy, the Brooks Act, and unspecified provisions of Washington State law. *Id.* at 556-57.

At this stage, we assume to be true the appellant's allegations that some surveying projects required licensing and that the agency ignored these requirements. IAF, Tab 12 at 6; *see Hessami*, 979 F.3d at 1369. These allegations appear to be supported by the record evidence. *E.g.*, IAF, Tab 7 at 38 (discussing projects requiring licensed surveyors in an agency policy manual). The appellant has cited to several sections of the Brooks Act, which appear to apply to procurement of Federal contracts for architectural and engineering

services. *Id.* at 8 (citing 40 U.S.C. §§ 1101-1104). Even if the Brooks Act does not directly apply to this situation, we believe the cited provisions are instructive. 40 U.S.C. § 1102 contemplates "professional services of an architectural or engineering nature, as defined by state law, if applicable, that are required to be performed or approved by a person licensed, registered, or certified to provide the services described," to include surveying and mapping. This seems to support the appellant's assertion that certain surveying activities required a licensed professional. Although the appellant has not identified with specificity which sections of Washington State law she believes the agency violated, that is not required at the jurisdictional stage. *See Baldwin v. Department of Veterans Affairs*, 113 M.S.P.R. 469, ¶ 12 (2010). We find that the appellant has alleged sufficient facts, accepted as true, to find that she made protected disclosures concerning work that was performed by unlicensed surveyors.

The appellant has also asserted that her disclosures about R.B.'s incorrect measurements constitute a nonfrivolous allegation that she disclosed a substantial and specific danger to public health and safety. PFR File, Tab 1 at 17-19. On review, the appellant directs the Board's attention to emails with her supervisor in September and October 2021, wherein she alleged that R.B. submitted incorrect measurements for a pump plant project. IAF, Tab 10 at 28-31. The appellant has asserted that the data and measurements in this project must be extremely accurate in order to avoid flooding, which could be catastrophic to the surrounding areas. IAF, Tab 1 at 7, Tab 7 at 5. In *Skarada*, 2022 MSPB 17, ¶ 12 n.3, the Board found that the appellant nonfrivolously alleged that his disclosure about a cognitively impaired physician implicated a substantial and specific danger to public health and safety because it "could undoubtedly lead to immediate and serious harm to patients." Although the appellant's allegation concerning R.B.'s allegedly inaccurate measurements was not well developed before the administrative judge, we acknowledge that, accepting as true the appellant's allegation that inaccurate measurements could

cause catastrophic flooding, this could implicate loss of life and/or property, and therefore the appellant has nonfrivolously alleged that she disclosed a substantial and specific danger to public health and safety.

<u>The appellant has nonfrivolously alleged that the agency subjected her to a personnel action.</u>

In the initial decision, the administrative judge found that the appellant failed to nonfrivolously allege that the agency subjected her to a personnel action. ID at 19-29. Specifically, she found that, considered individually, none of the appellant's allegations met the definition of personnel action as defined by 5 U.S.C. § 2302(a)(2)(A)(i)-(xi), and that, considering the appellant's allegations collectively, she failed to allege that she was subjected to a hostile work environment that changed her duties, responsibilities, or working conditions. *See* 5 U.S.C. § 2302(a)(2)(A)(xii).

We disagree because the written counseling issued to the appellant is a personnel action. ID at 22. In *Johnson v. Department of Health and Human Services*, 93 M.S.P.R. 38, ¶¶ 15-16 (2002), the Board found that, for purposes of jurisdiction, a letter of admonishment warning the appellant that his continued failure to follow established procedures could result in discipline was a personnel action because it sought to change the appellant's behavior. Similarly, the written counseling issued to the appellant in this case warned that "[f]urther episodes that involve discourtesy towards your coworkers may result in disciplinary actions being taken against you, up to and including removal from Federal Service." IAF, Tab 7 at 19. We therefore find that the appellant has nonfrivolously alleged that she was subjected to a personnel action when she was issued a letter of counseling.

Further, we find that the appellant nonfrivolously alleged that she was subjected to a significant change in her duties, responsibilities, and working conditions. In *Skarada*, the Board found that the appellant nonfrivolously alleged that he suffered a significant change in his duties, responsibilities, and working

conditions, wherein he alleged that his chain of command directed him to stop attending certain meetings and performing "extra duties," and excluded him from the hiring and interview process for two new hires. *Skarada*, 2022 MSPB 17, ¶¶ 15-17. Similarly, here, we have considered the alleged personnel actions collectively, and we find that the appellant has nonfrivolously alleged that her working conditions were changed when she received a letter of counseling, was denied funding to complete projects, was not assigned to projects, and was repeatedly asked to certify work that she believed she could not certify, resulting in risk to her professional licenses. ID at 5. Accordingly, the appellant has nonfrivolously alleged that she was subjected to personnel actions as defined by 5 U.S.C. § 2302(a)(2)(A)(xii).

The appellant has nonfrivolously alleged that her protected disclosures were a contributing factor to the alleged personnel actions.

In order to meet the contributing factor jurisdictional element, an appellant may raise a nonfrivolous allegation that the fact of, or content of, the protected whistleblowing was one factor that tended to affect the personnel action in any way. *Baldwin*, 113 M.S.P.R. 469, ¶ 22. One way that the appellant may do this is through the knowledge/timing test, by nonfrivolously alleging that the official taking the personnel action knew of the whistleblowing and that the personnel action occurred within a period of time such that a reasonable person could conclude that the whistleblowing was a contributing factor in the personnel action. 5 U.S.C. § 1221(e)(1). The knowledge/timing test is not the only way to demonstrate the contributing factor element. *Dorney v. Department of the Army*, 117 M.S.P.R. 480, ¶ 14 (2012). The Board will also consider other evidence, such as evidence pertaining to the strength or weakness of the agency's reasons for taking the personnel action, whether the whistleblowing was personally directed towards the official taking the action, or whether these individuals had a desire or motive to retaliate against the appellant. *Id.*, ¶ 15.

With the exception of Disclosure 6, which was made to the EEO office, the appellant has alleged that she communicated each of the alleged disclosures to her supervisor, who she claims is responsible for taking the alleged personnel actions. IAF, Tab 1 at 6-11, Tab 7 at 4-8. She has therefore nonfrivolously alleged the knowledge element for those disclosures.

Regarding timing, the appellant has alleged that her supervisor issued her a counseling letter approximately 2 weeks after she complained that the agency was using unqualified personnel to conduct land surveys, and that, between October 2021 and January 2022, she was subjected to a hostile work environment consisting of exclusion from projects, denial of funding, and repeated requests to sign off on projects that she did not oversee. IAF, Tab 6 at 65, Tab 7 at 4-8. The close temporal proximity between the alleged disclosures and the personnel actions satisfies the timing element. *See Easterbrook v. Department of Justice*, 85 M.S.P.R. 60, ¶ 10 (2000) (finding that a personnel action taken within 7 months of the protected disclosure satisfied the knowledge/timing test).

We find that the appellant has not nonfrivolously alleged that Disclosure 6 was a contributing factor to the alleged personnel actions because she has not satisfied the knowledge/timing test or provided other circumstantial evidence to support a nonfrivolous allegation of the contributing factor element. *See Dorney*, 117 M.S.P.R. 480, ¶ 14.

## ORDER

As set forth herein, we find that the appellant has established jurisdiction over Disclosures 2-5 and 7, and each of the alleged personnel actions. Accordingly, we remand this case to the regional office for a hearing on the merits in accordance with this Remand Order.

*Gina K. Grippando*

FOR THE BOARD:                    _____
                                   Gina K. Grippando
                                   Clerk of the Board

Washington, D.C.