**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

YOUDI MAO,
　　　　　　　Appellant,

　　　　v.

DEPARTMENT OF VETERANS
　　AFFAIRS,
　　　　　　　Agency.

DOCKET NUMBER
NY-1221-24-0050-W-1

DATE:  February 19, 2025

# THIS ORDER IS NONPRECEDENTIAL[1]

Michael Kane, Esquire, Westfield, New Jersey, for the appellant.

Mark Emilio Frassinelli, Esquire, Pittsburgh, Pennsylvania, for the agency.

**BEFORE**

Cathy A. Harris, Chairman
Henry J. Kerner, Vice Chairman*
Raymond A. Limon, Member

*Vice Chairman Kerner recused himself and
did not participate in the adjudication of this appeal.

**REMAND ORDER**

　　The appellant has filed a petition for review of the initial decision, which dismissed her individual right of action (IRA) appeal for lack of jurisdiction.  For

---

[1]  A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law.  Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions.  In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law.  *See* 5 C.F.R. § 1201.117(c).

the reasons discussed below, we GRANT the appellant's petition for review, REVERSE the initial decision to find that the appellant established jurisdiction over her claims as set forth below, and REMAND the case to the Northeastern Regional Office[2] for further adjudication in accordance with this Remand Order.

## BACKGROUND

At the time relevant to this appeal, the appellant was employed as a staff nurse at the East Orange Veterans Affairs Hospital in East Orange, New Jersey, where she was assigned to work in the Substance Abuse Residential Rehabilitation Treatment Program (SARRTP). Initial Appeal File (IAF), Tab 6 at 141, Tab 8 at 6. Frequently, though, the appellant instead worked at the Opiate Treatment Program (OTP), which is a methadone clinic on the East Orange Campus, when the OTP needed staffing coverage. IAF, Tab 8 at 6. According to the appellant, she had access to all codes and passwords for the narcotics safe and keys to all OTP doors and was trained to count narcotics inventory and distribution delivery with a second person to confirm the narcotics count once during the morning shift before the clinic opened and again after the clinic closed to patients. *Id.* at 6, 8.

It is undisputed that, on November 30, 2020, the appellant was working in the OTP, and she called and emailed the nurse manager, the Director of Clinical Services, and the Associate Director of Patient Care Services, her first-, second-, and third-line supervisors, respectively, to express a staffing concern and inform them that she was the only nurse working that morning and that not having an additional person on duty "to confirm [the inventory] was a problem given the narcotics count issue." IAF, Tab 8 at 9. According to the appellant, the Associate Director of Patient Care Services responded to her, stating that her supervisors would address her staffing concerns, and her supervisors responded to

---

[2] This appeal was initially adjudicated in the Board's New York Field Office, which has since closed.

her stating that in the future she should follow the chain of command. *Id.* at 10; IAF, Tab 10 at 5.

Thereafter, the appellant filed a complaint with the Office of Special Counsel (OSC) asserting that her communications regarding the staffing issues in the OTP constituted a protected disclosure under 5 U.S.C. § 2302(b)(8) because they implicated patient safety and constituted a violation of applicable rules and that, in retaliation for that disclosure, the agency took various actions against her including not selecting her for a permanent staff position in the OTP, denying her annual leave request, and changing her work schedule. IAF, Tab 1 at 9-22. On September 29, 2023, OSC issued a close-out letter informing the appellant of her right to seek corrective action from the Board. *Id.* at 7-8.

On November 27, 2023, the appellant filed the instant IRA appeal with the Board reiterating the allegations made before OSC. IAF, Tab 1 at 2. Following the agency's assertion that the Board lacked jurisdiction over the appeal, the administrative judge informed the appellant of her jurisdictional burden and ordered her to "file a statement, accompanied by evidence" demonstrating that her claims were within the Board's jurisdiction. IAF, Tab 7. The appellant responded to the administrative judge's order further detailing her allegations of whistleblower reprisal and including evidence to support those allegations. IAF, Tabs 8, 10.

On January 31, 2024, the administrative judge issued an initial decision without holding the appellant's requested hearing. IAF, Tab 11, Initial Decision (ID); IAF, Tab 1 at 1. She found it undisputed that the appellant exhausted her administrative remedy with OSC. ID at 6. However, she was "unpersuaded that a person in the appellant's position would have reasonably believed that the agency" engaged in any of the wrongdoing set forth in 5 U.S.C. § 2302(b)(8). ID at 8. Thus, the administrative judge found that the appellant failed to nonfrivolously allege that she made a protected disclosure. ID at 8-9. The administrative judge further found that, even if the appellant had nonfrivolously

alleged that she made a protected disclosure, the appellant also failed to nonfrivolously allege that the disclosure was a contributing factor in the actions at issue. ID at 9-10. Accordingly, the administrative judge dismissed the appeal for lack of jurisdiction. ID at 10.

The appellant has filed a petition for review of the initial decision. Petition for Review (PFR) File, Tab 1. She asserts that the administrative judge improperly considered the agency's evidence at the jurisdictional stage of the proceedings. *Id.* at 1-4. She reiterates her allegations and asserts that they constitute nonfrivolous allegations of the Board's jurisdiction. *Id.* at 4-26. The agency has responded to the appellant's petition for review, and the appellant has replied to the agency's response. PFR File, Tabs 3-4.

## DISCUSSION OF ARGUMENTS ON REVIEW

The Board has jurisdiction over an IRA appeal if the appellant exhausts her administrative remedies before OSC and makes nonfrivolous allegations that (1) she made a disclosure that was protected under 5 U.S.C. § 2302(b)(8) or engaged in protected activity described in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D), and (2) the disclosure or activity was a contributing factor in the agency's decision to take or fail to take a personnel action as defined by 5 U.S.C. § 2302(a) (2)(A). *Gabel v. Department of Veterans Affairs*, 2023 MSPB 4, ¶ 5; *Salerno v. Department of the Interior*, 123 M.S.P.R. 230, ¶ 5 (2016).

We agree with the administrative judge that the appellant proved by preponderant evidence that she exhausted her administrative remedy with OSC. ID at 6; IAF, Tab 1 at 7-22. We turn to whether the appellant nonfrivolously alleged that she made a protected disclosure or engaged in a protected activity that was a contributing factor in a personnel action. For the reasons set forth below, we find that the appellant has met this jurisdictional burden.

<u>The appellant nonfrivolously alleged that she made a protected disclosure under
5 U.S.C. § 2302(b)(8).</u>

A protected disclosure is a disclosure that an appellant reasonably believes evidences a violation of any law, rule, or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety.  5 U.S.C. § 2302(b)(8)(A); *Chambers v. Department of the Interior*, 515 F.3d 1362, 1367 (Fed. Cir. 2008); *Chavez v. Department of Veterans Affairs*, 120 M.S.P.R. 285, ¶ 18 (2013).  A nonfrivolous allegation of a protected whistleblowing disclosure is an allegation of facts that, if proven, would show that the appellant disclosed a matter that a reasonable person in her position would believe evidenced one of the categories of wrongdoing specified in 5 U.S.C. § 2302(b)(8)(A).  *Gabel*, 2023 MSPB 4, ¶ 6.

The appellant alleged that on November 30, 2023, she reported to the nurse manager, the Director of Clinical Services, and the Associate Director of Patient Care Services a "safety violation" related to inadequate staffing in the OTP. Specifically, she asserted that agency rules for the OTP required that two licensed and trained employees—either two registered nurses or one registered nurse and one pharmacist—work in the clinic in order to conduct a methadone inventory. IAF, Tab 8 at 8.  She asserted that this two-person requirement was a "safety mechanism which ensures staff responsibility of narcotic inventory" and that her disclosure of the agency's failure to meet that requirement evidenced the sort of wrongdoing covered under 5 U.S.C. § 2302(b)(8).[3]  *Id.*

---

[3] Although the appellant alternates between asserting that she disclosed a "safety violation" or "safety issue" and a violation of a rule, IAF, Tab 1 at 16-17; PFR File, Tab 1 at 18, and the administrative judge appears to have construed this disclosure as one of a "substantial and specific danger to public health or safety" under 5 U.S.C. § 2302(b)(8), ID at 9, the Board does not require, as a basis for its jurisdiction, that an appellant in an IRA appeal correctly label a category of wrongdoing under section 2302(b)(8), *see Rzucidlo v. Department of the Army*, 101 M.S.P.R. 616, ¶ 13 (2006).  In any event, as further explained below, we construe the appellant's claim as one disclosing a violation of law, rule, or regulation.

In the initial decision, the administrative summarized the "documentary evidence of record" surrounding the appellant's allegations. ID at 2-5. She considered the appellant's claim that the alleged staffing failure was in violation of agency policy and the Joint Commission Survey but was "unpersuaded that a person in the appellant's position would have reasonably believed that the agency" engaged in any of the wrongdoing set forth in section 2302(b)(8). ID at 8. The administrative judge specifically concluded that the appellant did not nonfrivolously allege that she believed that, unless another staff member was present before and after the clinic closed to witness her inventory count, a substantial danger existed. ID at 9. In support of these conclusions, the administrative judge stated that nothing in the appellant's emails disclosing the staffing deficiency indicated that the appellant believed it constituted a violation of policy or regulation or that it created a substantial or specific danger to public health and safety. ID at 8. The administrative judge also noted that the nurse manager to whom the appellant initially reported the issue "immediately acted to address the appellant's concerns." *Id.*

As noted, on review, the appellant asserts that the administrative judge erred in considering the agency's evidence at the jurisdictional stage. PFR File, Tab 1 at 1-4. She also challenges the administrative judge's conclusion that the appellant failed to nonfrivolously allege that she reasonably believed her disclosure evidenced a violation of law, rule, or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety. *Id.* at 9.

To the appellant's first argument, we agree that the administrative judge impermissibly considered the agency's evidence in making her jurisdictional findings. The U.S. Court of Appeals for the Federal Circuit has explained that "the question of whether the appellant has nonfrivolously alleged protected disclosures that contributed to a personnel action must be based on whether the employee alleged sufficient factual matter, accepted as true, to state a claim that

is plausible on its face." *See Hessami v. Merit Systems Protection Board*, 979 F.3d 1362, 1367, 1369 (Fed. Cir. 2020); *see also* 5 C.F.R. § 1201.4(s) (providing that a nonfrivolous allegation is an assertion that, if proven, could establish the matter at issue). While the agency's documentary submissions may be considered to give context or background to the appellant's claims, the evidence may not be weighed against the appellant's evidence, and the agency's evidence may not be dispositive. *Carney v. Department of Veterans Affairs*, 121 M.S.P.R. 446, ¶ 11 (2014); *see Hessami*, 979 F.3d at 1369 n.5. Here, the administrative judge considered evidence outside of the appellant's allegations, specifically, evidence showing that the nurse manager "immediately acted to address the appellant's concerns," when finding that the appellant failed to nonfrivolously allege that she made a protected disclosure. ID at 8. This evidence was apparently dispositive in the administrative judge's reasoning as it formed the basis of her ultimate conclusion that the appellant failed to make a nonfrivolous allegation of a protected disclosure. At the jurisdictional stage of these proceedings, that was improper.

Turning to the question of whether the appellant nonfrivolously alleged that she reasonably believed that she was disclosing a type of wrongdoing set forth in section 2302(b)(8), the test to determine whether a putative whistleblower has a reasonable belief in a disclosure is an objective one: whether a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the employee could reasonably conclude that the actions of the agency evidenced a violation of law, rule, or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety. *See Gabel*, 2023 MSPB 4, ¶ 6. Although this test is referenced in the initial decision, the analysis of whether the appellant had a reasonable belief that she was disclosing the type of wrongdoing set forth in section 2302(b)(8) is limited to the fact that the nurse manager quickly acted to address the appellant's concerns and the administrative judge's observation that

"nothing in the appellant's email's indicates that [she] believed the alleged staffing deficiency was a violation of policy or regulation . . . or created a substantial or specific danger to public health and safety." ID at 8. However, we do not believe these considerations are relevant to the question of whether a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the appellant could reasonably conclude that the agency's actions evidenced the type of wrongdoing set forth in section 2302(b)(8). Indeed, they concern only what actions the agency took after the appellant made her disclosure and the contents of the disclosure itself; they do not concern any contextual background relating to the question of why the appellant believed she was disclosing wrongdoing.

More relevant to this question, however, are the appellant's allegations that she believed the staffing shortage evidenced at least one of the types of wrongdoings set forth in section 2302(b)(8) because she had been trained that a second person was needed for the narcotics inventory count, because management had previously acknowledged that a second person was needed, and because the clinic has a sign-in sheet for the narcotics inventory count that has spaces for two signatures. IAF, Tab 8 at 10-11; PFR File, Tab 1 at 9. The documentary evidence submitted by the appellant at the jurisdictional stage also supports such a belief. *See Hessami*, 979 F.3d at 1369 n.5 (providing that, while the Board may not weigh the evidence at the jurisdictional stage in an IRA appeal, it need not consider the appellant's allegations in a vacuum). For example, the record includes the sign-in sheet for the narcotics inventory count, which provides two lines for signatures for each count. IAF, Tab 10 at 14. The record also includes a May 1, 2019 agency directive entitled "Controlled Substances Management," which explains that "[t]he use of a two-person (facilitator and witness) signature system is used for all balance adjustments." *Id.* at 27. The appellant also alleged that she spent as many as four days per week at the OTP and was the only SARRTP nurse who was "fully trained" in this area. IAF, Tab 8 at 7. Such

allegations, supported in the record, if proven true, would lead us to conclude that a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the appellant could reasonably conclude that the agency's actions evidenced a violation of law, rule, or regulation.[4]  As such, we find that the appellant nonfrivolously alleged that she reasonably believed she was disclosing a violation of law, rule, or regulation when she reported the staffing shortage issue. *See Hudson v. Department of Veterans Affairs*, 104 M.S.P.R. 283, ¶ 11 (2006) (stating that there is no de minimis exception to an allegation that an agency violates a law, rule, or regulation).  Accordingly, we find that the appellant nonfrivolously alleged that she made a protected disclosure under 5 U.S.C. § 2302(b)(8).

The appellant nonfrivolously alleged that her disclosure was a contributing factor in her nonselection, denial of annual leave request, and change in working conditions.

Turning to whether the appellant nonfrivolously alleged that she made a protected disclosure that was a contributing factor in a personnel action, the appellant alleged that, in reprisal for her disclosure, the agency did not select her for a permanent position in the OTP to which she applied, denied an annual leave request, and changed her work schedule.  IAF, Tab 1 at 2.  A nonselection is a decision concerning an appointment, which constitutes a personnel action under 5 U.S.C. § 2302(a)(2)(A)(i).  The denial of leave is a decision concerning a "benefit," and thus, a personnel action under 5 U.S.C. § 2302(a)(2)(A)(ix).

---

[4] In the initial decision, the administrative judge stated that she was "unpersuaded" that a person in the appellant's position would have reasonably believed that the agency had violated any law, rule, or regulation, or had committed gross mismanagement, gross waste of funds, abuse of authority, or substantial and specific danger to public health and safety. ID at 8.  Such a statement, however, further suggests that the administrative judge improperly weighed the evidence below.  At the jurisdictional stage, an appellant is only burdened with making a nonfrivolous allegation that she reasonably believed that her disclosure evidenced one of the circumstances described in 5 U.S.C. § 2302(b)(8). *See Bradley v. Department of Homeland Security*, 123 M.S.P.R. 547, ¶ 7 (2016).

Although a change in schedule is not directly contemplated in section 2302(a)(2)(A), it can constitute a personnel action to the extent it amounts to a significant change in duties, responsibilities, or working conditions under 5 U.S.C. § 2302(a)(2)(A)(xii).[5]  The appellant alleged that, for at least 3 months before she made her disclosure, she was working every Saturday, as she was "entitled to work 16 hours on the weekend per pay period," but that "within days" of her disclosure, the Director of Clinical Services instructed the nurse manager to change the appellant's schedule so that she could work only one Saturday every three weeks.  IAF, Tab 8 at 11.  We find that the appellant's allegation of a substantial reduction in weekend hours constitutes a nonfrivolous allegation of a significant change in working conditions under section 2302(a)(2)(A)(xii).  Thus, we turn to whether the appellant nonfrivolously alleged that her protected disclosure was a contributing factor in the nonselection, leave denial, and change in working conditions.  *See Gabel*, 2023 MSPB 4, ¶ 5.

To satisfy the contributing factor criterion at the jurisdictional stage of an IRA appeal, the appellant need only raise a nonfrivolous allegation that the fact of, or content of, the protected disclosure or activity was one factor that tended to affect the personnel action in any way.  *Skarada v. Department of Veterans Affairs*, 2022 MSPB 17, ¶ 19.  One way to establish this criterion is the knowledge/timing test, under which an employee may nonfrivolously allege that the disclosure was a contributing factor in a personnel action through circumstantial evidence, such as evidence that the official who took the personnel action knew of the disclosure and that the personnel action occurred within a period of time such that a reasonable person could conclude that the disclosure was a contributing factor in the personnel action.  *Id.*

---

[5] Alternatively, to the extent the schedule change implicates overtime hours, the action could also be covered under section 2302(a)(2)(A)(ix), which contemplates a decision concerning pay, among other things.

Regarding the appellant's nonselection for a permanent staff position in the OTP, the appellant asserted that she applied for this position in February 2021 and that she was informed on May 10, 2021, that she was not selected. IAF, Tab 1 at 18. The appellant alleged that the nurse manager was on the interview panel, and she also appears to allege that the Director of Clinical Services was the selecting official. IAF, Tab 8 at 13-15. The appellant nonfrivolously alleged that these officials had knowledge of the disclosure because she made it to them. Additionally, the appellant alleged that the nonselection occurred within approximately 6 months of her November 2020 disclosure, which satisfies the timing component of the knowledge/timing test. *See Skarada*, 2022 MSPB 17, ¶ 19 (stating that a personnel action taken within 1 to 2 years of the appellant's disclosure satisfies the knowledge/timing test); *Mastrullo v. Department of Labor*, 123 M.S.P.R. 110, ¶ 21 (2015) (same). Therefore, we find that the appellant nonfrivolously alleged that she made a protected disclosure that was a contributing factor in her nonselection.

Regarding the alleged denial of the appellant's annual leave request, the appellant's allegations in this regard are vague. IAF, Tab 1 at 2, 19. In her initial appeal, she asserted only that the agency "reject[ed]" her annual leave request; she does not allege when this decision was made or by whom. *Id.*; IAF, Tab 8. However, the record includes email communications between the nurse manager and the Associate Director of Patient Care Services wherein they discuss an October 2021 decision to deny one week of the appellant's two-week annual leave request for November 2021. IAF, Tab 6 at 111-12. These email communications give context to the appellant's allegations, and we have, thus, considered them. *See Carney*, 121 M.S.P.R. 446, ¶ 11. Reading the appellant's allegations together with these emails, we construe the appellant's claim as one alleging that the nurse manager partially denied her annual leave request in October 2021. Because the nurse manager had knowledge of the appellant's disclosure, and we construe the appellant's allegations so as to assert that her annual leave request was partially

denied within one year of making her disclosure, we find that the appellant has met the knowledge/timing test with respect to this claim, and that she, therefore, nonfrivolously alleged that her disclosure was a contributing factor in this action. *See Usharauli v. Department of Health and Human Services*, 116 M.S.P.R. 383, ¶ 19 (2011) (stating that any doubt or ambiguity as to whether the appellant made a nonfrivolous jurisdictional allegation should be resolved in favor of finding jurisdiction); *Jessup v. Department of Homeland Security*, 107 M.S.P.R. 1, ¶ 10 (2007) (observing that the appellant's burden of making a nonfrivolous allegation is low and requires only a minimal sufficient showing).

Regarding the appellant's allegation of a change in working conditions (i.e., the change in the work schedule), she alleges that, in or around December 2020 and January 2021, the Director of Clinical Services directed the nurse manager to change the appellant's schedule so that she could only work one Saturday every three weeks instead of her usual schedule of working every Saturday. IAF, Tab 8 at 11, Tab 10 at 8-9. These allegations meet both prongs of the knowledge/timing test because the agency officials alleged to be responsible for the action are the ones to whom the disclosure was made and the action occurred within only months of the disclosure. *See Skarada*, 2022 MSPB 17, ¶ 19. Therefore, we find that the appellant nonfrivolously alleged that she made a protected disclosure that was a contributing factor in her change in working conditions.

In sum, we find that the appellant nonfrivolously alleged that she made a protected disclosure under 5 U.S.C. § 2302(b)(8) when she alleged that she disclosed a violation of law, rule, or regulation relating to a staffing issue at the OTP and that her disclosure was a contributing factor in her nonselection, denial of annual leave, and change in working conditions. Accordingly, we find that she has established the Board's jurisdiction over her claims as set forth in this order. *See Gabel*, 2023 MSPB 4, ¶ 5.

**ORDER**

Having found that the appellant has met her jurisdictional burdens, we remand this case to the regional office for a hearing and further adjudication consistent with this Remand Order.

FOR THE BOARD:                    *Gina K. Grippando*
                                  _____
                                  Gina K. Grippando
                                  Clerk of the Board

Washington, D.C.